OPINION
{¶ 1} This matter is submitted to this court on the record and the briefs of the parties. Appellant, Luke E. Klaue, appeals the judgment entered by the Ashtabula County Court of Common Pleas. The trial court sentenced Klaue to a six-year prison term for his convictions for illegal manufacture of drugs within the vicinity of a school and illegal assembly or possession of chemicals for the manufacture of drugs within the vicinity of a school. *Page 2 
 {¶ 2} Around 11:00 p.m. on August 15, 2006, Klaue checked into a room at the Freeway Motel in Ashtabula Township. Deputy Robert Ginn of the Ashtabula County Sheriffs Department testified that the Freeway Motel is notorious for drug activity. A few hours after he checked in, at 1:30 a.m. the next morning, Klaue and his wife, Katrina, left the Freeway Motel in a vehicle driven by Katrina.
 {¶ 3} Deputy Ginn stopped Klaue's wife's vehicle shortly after it left the Freeway Motel, because the vehicle had a loud exhaust system and no license plate light. Upon further investigation, Deputy Ginn discovered that Katrina's driver's license was expired and the license plates on the vehicle were expired and fictitious. As a result, Deputy Ginn conducted a search of the vehicle, since it was subject to impound.
 {¶ 4} During the search, Deputy Ginn noticed a "chemical" smell to Klaue. He testified that this smell was consistent with the manufacture of methamphetamine. Deputy Ginn conducted a pat-down search of Klaue. In Klaue's pocket, Deputy Ginn found a key to room number 17 at the Freeway Motel. Subsequent investigation revealed that room number 17 at the Freeway Motel was registered in Klaue's name.
 {¶ 5} Deputy Ginn discovered two backpacks in the vehicle. One of the backpacks contained miscellaneous papers. The other backpack contained clothing, a wallet with Katrina's identification, and a water bottle. Inside the water bottle was white sludge. Deputy Ginn asked generically, "what is in here," and Klaue responded that it was Alka Seltzer. Deputy Ginn testified that he did not believe the substance was Alka Seltzer and that he believed the substance was associated with methamphetamine production. Subsequent testing at the Ohio Bureau of Criminal Identification and *Page 3 
Investigation ("B.C.I.") revealed the substance in the water bottle was pseudoephedrine, which is used in the production of methamphetamine.
 {¶ 6} Deputy Ginn informed Klaue that the officers were going to seek a search warrant for the motel room. Klaue told him whatever the officers found in the "`motel room [was his,] as well as Katrina's.'"
 {¶ 7} A search warrant was obtained for room number 17 at the Freeway Motel. A search of the room took place at approximately 11:00 a.m. the morning after the stop. Officers watched the motel room for the ten hours from the time of the stop until the room was searched. No one entered or exited the motel room during that time.
 {¶ 8} Several items were found in the motel room that are consistent with the production of methamphetamine. Specifically, the officers found Ball mason jars; coffee filters with red phosphorus; liquid HEET (a product containing isopropyl alcohol); discarded blister packs, which formerly contained pseudoephedrine tablets; muriatic acid; a pop bottle with its top cut off; a hot plate; drain cleaner; peroxide; fish tubing; and discarded matchbooks. In addition, Klaue's driver's license was found in the motel room.
 {¶ 9} Klaue was indicted on one count of illegal manufacture of drugs within the vicinity of a school, in violation of R.C. 2925.04, a first-degree felony, and one count of illegal assembly or possession of chemicals for the manufacture of drugs within the vicinity of a school, in violation of R.C. 2925.041, a second-degree felony.
 {¶ 10} Klaue pled not guilty to the charges, and a jury trial was held. At the close of the state's case-in-chief, Klaue moved for acquittal pursuant to Crim.R. 29. The trial court overruled his motion. Klaue did not present any evidence. The jury found Klaue *Page 4 
guilty of both counts of the indictment. The trial court found that the two counts were allied offenses of similar import and merged the counts for the purpose of sentencing. The trial court imposed a six-year prison term on Klaue for his conviction for illegal manufacture of drugs within the vicinity of a school.
 {¶ 11} Klaue has timely appealed the judgment of the trial court. Klaue raises two assignments of error. His first assignment of error is:
 {¶ 12} "There was insufficient evidence presented to sustain a conviction for the charges of illegal manufacture of drugs and illegal assembly or possession of chemicals for the manufacture of drugs in violation of defendant-appellant's Fifth, Sixth and Fourteenth Amendment rights."
 {¶ 13} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 14} Klaue was convicted of illegal manufacture of drugs within the vicinity of a school, in violation of R.C. 2925.04, which provides, in pertinent part:
 {¶ 15} "(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.
 {¶ 16} "* * * *Page 5 
 {¶ 17} "(C)(1) Whoever commits a violation of division (A) of this section that involves any drug other than marihuana is guilty of illegal manufacture of drugs * * *
 {¶ 18} "(3) If the drug involved in the violation of division (A) of this section is methamphetamine, the penalty for the violation shall be determined as follows:
 {¶ 19} "(a) Except as otherwise provided in division (C)(3)(b) of this section, if the drug involved in the violation is methamphetamine, illegal manufacture of drugs is a felony of the second degree * * * .
 {¶ 20} "(b) If the drug involved in the violation is methamphetamine and if the offense was committed in the vicinity of a juvenile, in the vicinity of a school, or on public premises, illegal manufacture of drugs is a felony of the first degree * * * ."
 {¶ 21} Klaue was also convicted of illegal assembly or possession of chemicals for the manufacture of drugs within the vicinity of a school, in violation of R.C. 2925.041, which provides:
 {¶ 22} "(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.
 {¶ 23} "(B) In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section. *Page 6 
 {¶ 24} "(C) Whoever violates this section is guilty of illegal assembly or possession of chemicals for the manufacture of drugs. * * * If the offense was committed in the vicinity of a juvenile or in the vicinity of a school, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the second degree * * * ."
 {¶ 25} Prior to trial, the parties entered into a stipulation that the Freeway Motel was within the vicinity of a local elementary school. "A stipulation is a `voluntary agreement * * * concerning (the) disposition of some relevant point so as to obviate (the) need for proof.'" (Citations omitted.) State v. Abercrombie, 12th Dist. No. CA2001-06-057, 2002-Ohio-2414, at ¶ 27. As such, there was sufficient evidence on this point.
 {¶ 26} In the car, Deputy Ginn found a water bottle containing pseudoephedrine. Sergeant Mark Allen of the Ashtabula County Sheriffs Department testified that tablets of certain cold medications are typically soaked in water or isopropyl alcohol to break down the binder of the tablets and access the pseudoephedrine. Both Sergeant Allen and Barbara DiPietro from B.C.I. testified that pseudoephedrine is a precursor to the production of methamphetamine.
 {¶ 27} In the motel room, the officers discovered a pellet gun, binoculars, and pepper spray. Sergeant Allen testified weapons and surveillance equipment are commonly found near methamphetamine labs. He testified that this was because methamphetamine users have a tendency to become "very paranoid."
 {¶ 28} During the search, the following items directly relating to the production of methamphetamine were found in the motel room: Ball mason jars; coffee filters with red phosphorus; discarded blister packs, which formerly contained pseudoephedrine tablets; muriatic acid; isopropyl alcohol; a pop bottle with its top cut off; a hot plate; drain *Page 7 
cleaner; peroxide; fish tubing; and discarded matchbooks. Sergeant Allen testified that all the items found in the room were consistent with a "red phosphorous" methamphetamine lab.
 {¶ 29} Sergeant Allen presented detailed testimony regarding the function of each of the items in the process of methamphetamine production. For example, Sergeant Allen testified that a critical ingredient in this production method is phosphorous. A common way to get phosphorous is through matchbooks. The strike pads on some matchbooks contain phosphorous. Sergeant Allen testified individuals will often buy cases of matchbooks, remove the strike pads, and discard the remainder of the matchbooks. In room 17, the officers found numerous discarded matchbooks.
 {¶ 30} Klaue does not challenge the state's evidence that these chemicals and other items are ingredients for the production of methamphetamine. Accordingly, we will not conduct a detailed review of how each item is used in the production process. However, we have thoroughly reviewed the entire record and, in particular, Sergeant Allen's testimony. Sergeant Allen provided a detailed explanation of how each item is used at a specific time in the manufacturing process.
 {¶ 31} Klaue's main argument on appeal is that the state did not provide sufficient evidence that he was in possession of the items in question. We disagree.
 {¶ 32} "Possession of drugs can be either actual or constructive."State v. Rollins, 3d Dist. No. 11-05-08, 2006-Ohio-1879, at ¶ 22, citingState v. Haynes (1971), 25 Ohio St.2d 264. Even if the contraband is not in a suspect's "immediate physical possession," the suspect may still constructively possess the item, so long as the evidence demonstrates that he "was able to exercise dominion and control over the *Page 8 
controlled substance." State v. Lee, 11th Dist. No. 2002-T-0168,2004-Ohio-6954, at ¶ 41, citing State v. Wolery (1976),46 Ohio St.2d 316, 329. To prove constructive possession, "[i]t must also be shown that the [defendant] was conscious of the presence of the object."State v. Hankerson (1982), 70 Ohio St.2d 87, 91.
 {¶ 33} The Supreme Court of Ohio has held that "`circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'"State v. Biros (1997), 78 Ohio St.3d 426, 447, quoting State v.Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus. The Third Appellate District has held that constructive possession of contraband may be supported solely by circumstantial evidence. State v.Rollins, 2006-Ohio-1879, at ¶ 22, citing State v. Jenks,61 Ohio St.3d at 272-273.
 {¶ 34} Klaue argues there was insufficient evidence that he possessed the pseudoephedrine found in the water bottle. When Deputy Ginn generally asked what was in the water bottle, Klaue responded it was Alka Seltzer. The fact that Klaue attempted to deceive Deputy Ginn about the contents of the water bottle is, at a minimum, circumstantial evidence that he constructively possessed the bottle. That is, if the water bottle was not Klaue's and he did not know what was in it, why would he attempt to conceal the identity of the substance? The water bottle was found in a vehicle that Klaue was a passenger in. Thus, he had access to the water bottle. Further, he was aware of the object, as he immediately tried to offer a noncriminal explanation for the substance. Thus, the state presented sufficient evidence that Klaue possessed the bottle containing pseudoephedrine. *Page 9 
 {¶ 35} Next, Klaue contends there was insufficient evidence that he possessed the items found in room 17 at the Freeway Motel. Room number 17 was registered in Klaue's name, and a key to room number 17 was found in Klaue's pocket. Further, Klaue's driver's license was found in room 17. Finally, Klaue essentially admitted that he possessed the items in the room, since he told Deputy Ginn that anything found in the room was his.
 {¶ 36} In addition to this evidence, there was evidence that Klaue had a "chemical" smell to him when the vehicle was stopped after it left the motel. This is additional evidence linking Klaue to the items found in room 17.
 {¶ 37} Klaue argues that there was insufficient time for him to have been engaged in the activities in the motel room, since he checked in only two-and-one-half hours prior to the vehicle being stopped by Deputy Ginn. Sergeant Allen testified that there are many steps in the production of methamphetamine. In this matter, while the manufacturing process had been initiated and progressed to a certain degree, it had not concluded. Thus, Klaue did not have to be in the motel room for the time required to fully complete a cycle of methamphetamine production.
 {¶ 38} Klaue argues that the items could have been placed in the motel room by someone else. However, Binni Patel, an employee of the Freeway Motel, testified that the rooms are always cleaned after a previous guest checks out and prior to the arrival of a new guest. In addition, room 17 was under surveillance from the time of the motor vehicle stop until the search warrant was executed, and no one entered or exited the room during that time. *Page 10 
 {¶ 39} The state presented sufficient evidence for the jury to find beyond a reasonable doubt that Klaue possessed the water bottle and the items in the motel room and that he was engaged in the manufacture of methamphetamine. Accordingly, the trial court did not err by overruling Klaue's Crim.R. 29 motion for acquittal.
 {¶ 40} Klaue's first assignment of error is without merit.
 {¶ 41} Klaue's second assignment of error is:
 {¶ 42} "The trial court abused its discretion by permitting the state to introduce improper other acts evidence which denied defendant-appellant a fair and impartial trial, resulting in a violation of his right to due process under Section 10, Article I of the Ohio Constitution and the Fourth, Sixth and Fourteenth Amendments to the United States Constitution."
 {¶ 43} Klaue argues that the testimony of two witnesses was inadmissible pursuant to the rules of evidence. One of the witnesses was Deputy Scott Daniels of the Ashtabula County Sheriff's Department. The second witness was Ann Lynch, an intake assessment investigator for Ashtabula County Children Services.
 {¶ 44} "The admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43, citing State v. Issa (2001), 93 Ohio St.3d 49, 64. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157. (Citations omitted.) *Page 11 
 {¶ 45} We will first address Klaue's argument regarding Deputy Daniels' testimony. Deputy Daniels testified regarding an investigation at Klaue's mother's residence that occurred in April 2006, four months prior to the underlying events in this matter. Deputy Daniels testified he responded to Klaue's mother's residence and investigated a backpack that Klaue discarded there. Inside the backpack, Deputy Daniels found several items associated with the production of methamphetamine.
 {¶ 46} Klaue claims the admission of this evidence pertaining to "other acts" was in violation of Evid.R. 404(B), which provides:
 {¶ 47} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 48} In addition, R.C. 2945.59 provides:
 {¶ 49} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 50} The Supreme Court of Ohio has held that evidence of other acts is to be construed against admissibility. State v. Lowe (1994),69 Ohio St.3d 527, 530. This is because "[t]he average individual is prone to much more readily believe that a person is *Page 12 
guilty of the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime." State v. Hector (1969),19 Ohio St.2d 167, 174-175.
 {¶ 51} The Supreme Court of Ohio has held that "[e]vidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." State v. Lowe,69 Ohio St.3d at 530. "Under R.C. 2945.59, the state does not need to establish proof beyond a reasonable doubt that the offender committed the other act." State v. Burns, 11th Dist. No. 2000-L-189, 2002-Ohio-3585, at ¶ 17, citing State v. Carter (1971), 26 Ohio St.2d 79, paragraph one of the syllabus. "Rather, the state need only offer substantial evidence that the defendant committed the other alleged act." Id. at ¶ 17, citingState v. Carter, paragraph one of the syllabus.
 {¶ 52} Deputy Daniels testified that Klaue told him where the backpack was on his mother's property. In addition, Klaue told Deputy Daniels that there were chemicals in the backpack. Thus, there was substantial evidence that Klaue possessed the items found at his mother's residence in April 2006.
 {¶ 53} Evidence that the defendant committed other criminal acts is admissible to prove identity of the perpetrator in the charged crime if a modus operandi is established. State v. Burns, 2002-Ohio-3585, at ¶ 33, citing State v. Lowe, 69 Ohio St.3d at 531. "A modus operandi provides a `behavioral fingerprint' for the other act, which can be compared to the behavioral fingerprint for the crime in question." Id., citing State v. Lowe, supra. *Page 13 
 {¶ 54} Deputy Daniels specifically testified as to the items found in the backpack during the April 2006 investigation. Those items included: an empty bottle of liquid HEET; two cans of brake cleaner (one full and one empty); a plastic bottle with white sludge; coffee filters; muriatic acid; and two canning jars. Thus, several of the items were identical to those found during the August 2006 search of Klaue's vehicle and room 17 at the Freeway motel.
 {¶ 55} Sergeant Allen testified that there is not one way to manufacture methamphetamine. He testified that each methamphetamine producer has a different way of making it. Thus, the fact that Klaue possessed certain ingredients for the manufacture of methamphetamine in April 2006 was admissible to show that he was the individual that possessed similar ingredients in August 2006 at the Freeway Motel. In this matter, Klaue's modus operandi was his particular "recipe" for methamphetamine.
 {¶ 56} Deputy Daniels' testimony was admissible under Evid.R. 404(B), as it tended to show identity of the perpetrator in the August 2006 incident.
 {¶ 57} Also, Klaue contends the admission of this evidence violates Evid.R. 403, which provides, in part:
 {¶ 58} "(A) Exclusion mandatory
 {¶ 59} "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 60} As we have previously discussed, Deputy Daniels' testimony regarding the April 2006 incident was relevant and had probative value, in that it pertained to the identity of the perpetrator in the August 2006 incident. Also, while there is always some *Page 14 
prejudice associated with the introduction of a prior criminal act, we do not consider this "unfair" prejudice, in that Deputy Daniels' testimony was proper modus operandi evidence. Further, Deputy Daniels' testimony was short and specific, so there was minimal danger of confusing the issues, or misleading the jury. Therefore, the danger of unfair prejudice, confusion of the issues, or misleading the jury did not substantially outweigh the probative value of the evidence.
 {¶ 61} The trial court did not abuse its discretion by admitting Deputy Daniels' testimony regarding the April 2006 incident.
 {¶ 62} Next, we will address Klaue's assignment of error as it relates to the testimony of Ann Lynch. Prior to Lynch's testimony, Klaue made an objection to her entire testimony. Lynch conducted an investigation regarding Klaue's children. As part of that investigation, Lynch interviewed Klaue on two occasions. The first interview was on August 1, 2006, and the second interview was on August 22, 2006, while Klaue was in jail on charges related to the instant offense. Klaue told Lynch that he and his wife used methamphetamine during certain periods in 2005 and 2006. Further, Klaue told Lynch that while he had stopped using methamphetamine, he continued to manufacture methamphetamine for financial reasons. Also, he told her that on a previous occasion, "[h]e tried to dump chemicals at his mother's house after he had manufactured meth."
 {¶ 63} We will initially determine if Lynch's testimony was admissible under Evid.R. 404(B). Unlike Deputy Daniels' testimony, Lynch's testimony only contained a single, general reference to the April 2006 incident at Klaue's mother's residence. Her testimony did not discuss any details regarding the event. Thus, Lynch's testimony was not specific enough to be used as modus operandi evidence. *Page 15 
 {¶ 64} It appears that Lynch's testimony was offered solely to establish that Klaue had regularly used and manufactured methamphetamine in the past. Thus, the inference is that he was involved in the manufacture of methamphetamine on the night in question. This is precisely the type of evidence that is excluded by Evid.R. 404(B).
 {¶ 65} Moreover, we are troubled by Lynch's testimony in this matter that she did not have to give Klaue Miranda warnings. Lynch was an agent of the state, interviewing a criminal defendant, who was incarcerated, only days after his arrest. We acknowledge that Lynch was permitted, or even obligated, to interview Klaue to make her recommendation regarding the status of his children. However, we are deeply concerned that the interview was used as part of Klaue's criminal trial. Essentially, through Lynch's testimony, the state conveyed Klaue'sun-Mirandized confession to the jury. Most disturbing is that the confession was elicited via a social worker under the guise of what was in the best interest of the children.
 {¶ 66} Lynch's testimony was inadmissible under Evid.R. 404(B).
 {¶ 67} Lynch's testimony was also inadmissible under Evid.R. 403(A). There was minimal probative value in Lynch's testimony, in that a regular user of methamphetamine, who has previously manufactured methamphetamine, is more likely to have manufactured methamphetamine on the date in question. However, there is also significant prejudice that results from this testimony. The jury heard evidence that Klaue had been using and/or manufacturing methamphetamine for a full year. In addition, there was a danger of confusing the issues. The jury was asked to decide what occurred on August 16-17, 2006. Whether Klaue used or manufactured methamphetamine in 2005 could only act to complicate and confuse the issues. *Page 16 
 {¶ 68} The trial court abused its discretion by admitting Lynch's testimony. However, for the following reasons, we consider this error to be harmless error. State v. Brown, 100 Ohio St.3d 51, 2003-Ohio-51, at ¶ 25. First, evidence regarding the incident at Klaue's mother's residence was properly before the jury through Deputy Daniels' testimony. Second, there was overwhelming evidence of Klaue's guilt. Id. There were numerous items associated with the production of methamphetamine in a motel room registered in Klaue's name. In addition, Klaue had the key to that room in his pocket when he was arrested. Also, at the time of his arrest, Klaue had a "chemical" odor to him, consistent with the manufacture of methamphetamine.
 {¶ 69} Finally, and most importantly, Klaue told Deputy Ginn that the items in room number 17 were his. This court has recently deemed an evidentiary error harmless where the defendant led the investigating officers directly to the contraband. See State v. Ogletree, 11th Dist. No. 2005-P-0040, 2006-Ohio-6107, at ¶ 31. Similarly, in the case sub judice, Klaue's statement to Deputy Ginn amounted to an admission of the charged crime.
 {¶ 70} Klaue's second assignment of error is without merit.
 {¶ 71} The judgment of the trial court is affirmed.
MARY JANE TRAPP, J., concurs,
 COLLEEN MARY OTOOLE, J., dissents with Dissenting Opinion. *Page 17