[Cite as *State v. Clark*, 2015-Ohio-5003.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

STATE OF OHIO,                :

                               :       Case No. 14CA20

      Plaintiff-Appellee,         :

                               :

      vs.                         :       DECISION AND JUDGMENT
                               :       ENTRY

DALLAS P. CLARK,            :

                               :

      Defendant-Appellant.     :       **Released: 11/24/15**
_____

APPEARANCES:

Susan M. Zurface Daniels, Hillsboro, Ohio, for Appellant.[1]

Anneka Collins, Highland County Prosecuting Attorney, and James Roeder, Assistant Prosecuting Attorney, Hillsboro, Ohio, for Appellee.

_____

McFarland, A.J.

{¶1} Dallas P. Clark appeals his conviction in the Highland County Court of Common Pleas after a jury found him guilty of one count of illegal assembly or possession of chemicals for the manufacture of drugs, a third-degree felony. On appeal, Clark contends: (1) the trial court erred in denying his Rule 29 motion when the State presented no evidence of "intent to manufacture" methamphetamine; (2) his conviction was against the manifest weight of the evidence; (3) his conviction was based on insufficient

---

[1] Attorney Daniels was granted leave to withdraw as counsel for Appellant on July 31, 2015.

evidence; and (4) his five year mandatory sentence pursuant to R.C. 2925.041 was improper and invalid as a matter of law.  Upon review, we find no merit to Appellant's first three assignments of error.  However, his fourth assignment of error regarding his five-year mandatory sentence has merit.  Accordingly, we overrule Appellant's first three assignments of error and remand the matter for resentencing in accordance with current Ohio law.

FACTS

{¶2}  On September 9, 2014, Appellant Dallas P. Clark was indicted on one count of illegal assembly or possession of chemicals for the manufacture of drugs, a violation of R.C. 2925.041(A), a felony of the third degree. The indictment arose from activities which occurred on or about August 13, 2014 when officers executed a search warrant at 6172 Holaday Road in Highland County, and found various items used in the production of methamphetamine.  Kevin Colville lived at the address. Appellant and Amanda Campanero, with whom he was romantically involved, also stayed there on occasion. Appellant, Colville, and Campanero were charged and arrested.

{¶3}  Appellant was tried on the sole count on November 13, 2014. The State presented testimony from the following individuals: Kelsey Degan, a forensic scientist employed by the Ohio Bureau of Criminal

Investigation (BCI); Detective Daniel Croy of the Highland County Sheriff's Department; Detective Jennifer Swackhammer, Deputy Vinny Antinore, Detective Randy Sanders, and Detective Chris Bowen, all of the sheriff's department.  Co-defendant Kevin Colville testified on behalf of Appellant. Appellant also testified in his own defense.

{¶4}  In closing, the State argued that circumstantial evidence showed Appellant possessed pseudoephedrine and lithium, necessary chemicals in the manufacture of drugs, and that he possessed the items with the intent to manufacture drugs.  The State pointed out Appellant purchased pseudoephedrine at least twice a month on average in the year 2014.  The State emphasized Appellant knew Colville cooked methamphetamine.  The State noted the room in which Appellant was located contained a majority of the items found for the manufacture of drugs.  At the conclusion of the one-day trial, the jury returned a verdict of guilty.

{¶5}  This timely appeal followed.  Where relevant, additional facts will be related below.

ASSIGNMENTS OF ERROR

"I.  THE TRIAL COURT ERRED IN DENYING
APPELLANT'S MOTION PURSUANT TO CRIM.R. 29(A)
WHEN THE STATE PRESENTED NO EVIDENCE OF
"INTENT TO MANUFACTURE" METHAMPHETAMINE,

WHICH IS AN ESSENTIAL ELEMENT OF THE CRIME OF ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF METHAMPHETAMINE PURSUANT TO R.C. 2925.041 OF THE OHIO REVISED CODE.

II. APPELLANT'S CONVICTION FOR ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF METHAMPHETAMINE PURSUANT TO O.R.C. 2925.041 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. APPELLANT'S CONVICTION FOR ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF METHAMPHETAMINE PURSUANT TO O.R.C. 2925.O41 WAS BASED ON INSUFFICIENT EVIDENCE.

IV. THE SENTENCING PROVISIONS OF 2925.041 OF THE OHIO REVISED CODE, WHEN READ IN PARI MATERIA WITH THE 2929.14 ARE IN CONFLICT WITH EACH OTHER, RENDERING A FIVE (5) YEAR MANDATORY SENTENCE PURSUANT TO 2925.041 IMPROPER AND INVALID AS A MATTER OF LAW."

{¶6} The arguments made in the first three assignments of error are interrelated.  For ease of analysis, we begin with consideration of Appellant's Assignment of Error Two.  Appellant argues his conviction was against the manifest weight of the evidence.

ASSIGNMENT OF ERROR TWO

A.  STANDARD OF REVIEW

{¶7} When an appellate court considers a claim that a conviction is

against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. The reviewing court must bear in mind however, that credibility generally is an issue for the trier of fact to resolve. *State v. Wickersham,* 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, ¶ 25; *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31. " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' " *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya,* 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson,* 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997). As explained in *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517:

> " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' "

**{¶8}** *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; accord *State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

**{¶9}** Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered .' " *Wickersham, supra,* at 26, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). A reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.,* quoting

*Martin*, 20 Ohio App.3d at 175; *State v. Lindsey,* 87 Ohio St.3d 479, 483,

721 N.E.2d 995 (2000).

## B. LEGAL ANALYSIS

{¶10}  Appellant was convicted of R.C. 2925.041, illegal assembly or

possession of chemicals for manufacture of drugs, which provides:

> "(A) No person shall knowingly assemble or possess one or
> more chemicals that may be used to manufacture a controlled
> substance in schedule I or II with the intent to manufacture a
> controlled substance in schedule I or II in violation of section
> 2925.04 of the Revised Code."

{¶11}  R.C. 2925.04 states:

> "(A) No person shall knowingly cultivate marihuana or
> knowingly manufacture or otherwise engage in any part of the
> production of a controlled substance."

{¶12}  Appellant contends the State failed to present any evidence of

"intent to manufacture."  Appellant points out the "intent to manufacture a

controlled substance" is not defined in the Ohio Revised Code, and directs

us to cases from the Eighth, Ninth, and Eleventh appellate districts which

have analyzed what constitutes proof of this particular element.

{¶13}  Appellee responds that the facts and testimony of various

witnesses provide evidence from which a reasonable juror could infer

Appellant held the intent to manufacture. Appellee points out Appellant was

present in a residence where a search warrant had recently been executed for

illegal manufacture of methamphetamine.  The prior warrant was executed

within a month of Appellant's own arrest, at the same house, for the same

crime.  Appellee points out the home and property contained various other

items for the production of methamphetamine.  Appellee also points to

Appellant's history of purchasing an inordinate amount of pseudoephedrine.

Finally, Appellee emphasizes the room in which Appellant and his girlfriend

stayed was found to have many of the items also offered as evidence for the

production of methamphetamine.

{¶14}  We begin by noting that R.C. 2925.041(B) further provides:

> "In a prosecution under this section, it is not necessary to allege
> or prove that the offender assembled or possessed all chemicals
> necessary to manufacture a controlled substance in schedule I
> or II.  The assembly or possession of a single chemical that may
> be used in the manufacture of a controlled substance in
> schedule I or II, with the intent to manufacture a controlled
> substance in either schedule, is sufficient to violate this
> section."

{¶15}  Appellant's trial began with testimony from Kelsey

Degan of BCI.  The trial court declared her to be an expert in

substance identification and measuring.  She identified the following:

> 1) States' Exhibit 1, a copy of a lab report she prepared in
> Appellant's case.  Degan testified she received evidence from
> Detective Swackhammer on August 21, 2014.

> 2)  State's Exhibit 2, a manila envelope containing a white
> substance discovered to contain methamphetamine.  Degan
> emphasized she followed all procedures and that she could say

beyond a reasonable degree of scientific certainty that the substance in the manila envelope was methamphetamine.

3) State's Exhibit 27, twenty white tablets containing pseudoephedrine, which she had tested and analyzed. She again testified beyond a reasonable degree of scientific certainty that the tablets were pseudoephedrine.

Degan testified after she analyzed the evidence she sealed it up to be returned. Degan also testified it is not a standard operating procedure to test for DNA on drugs. On cross-examination, the defense emphasized that there was no DNA link between Appellant and the methamphetamine confiscated.

{¶16} Detective Daniel Croy testified one of his duties is maintaining the evidence room at the Highland County Sheriff's Department. He and Detective Swackhammer testified to the chain of custody for State's Exhibits 2 and 27. Detective Jennifer Swackhammer testified she transported Exhibits 2 and 27 to BCI and also returned them to the evidence room.

{¶17} Detective Vinny Antinore testified he has been employed by the sheriff's office for nearly three years. Primarily, his duty is to dispatch. However, on August 13, 2014, he assisted other officers on execution of a search warrant on Holaday Road. He identified Appellant for the jury. Deputy Antinore testified when he first saw Appellant at the scene, he was being escorted out of the home onto the front porch. Deputy Antinore noticed Appellant had something in his hand he was attempting to conceal.

Later, after Appellant was removed from the porch, the item recovered was a clear bag with a white powdery substance. The bag was located on the porch, directly under where Appellant had been seated. Deputy Antinore identified State's Exhibit 2 as the item that had been recovered by Sergeant Bowen, from where Appellant had been sitting.

{¶18} On cross-examination, Deputy Antinore acknowledged he had not consistently assisted with search warrants during his three years of employment. He first saw Appellant with Sergeant Seaman. Deputy Antinore testified he did not advise Sergeant Seaman he saw Appellant holding something in his hand. Deputy Antinore further testified he never approached Appellant and attempted to retrieve the item in his hand. After Appellant was removed from the porch, he advised Sergeant Bowen he observed something in Appellant's hand. Then he walked over and saw the item on the porch. On redirect, Deputy Antinore testified he didn't alert anyone about the item in Appellant's hand immediately because he was fearful if Appellant was aware of the information, he would throw the item and the officers would never find it.

{¶19} The next witness was Detective Randy Sanders. Detective Sanders testified to his experience and training identifying and dismantling methamphetamine labs. Detective Sanders testified as to the process of

manufacturing methamphetamine.  He also testified he was present when the warrant was executed at Holaday Road on August 13, 2104.  He identified Appellant.

{¶20}  Detective Sanders testified Appellant had been staying at the Holaday Road residence because he saw him there on July 23, 2014 when he drove by.  On August 13, 2014, when the warrant was executed, Detective Sanders searched Kevin Colville's bedroom and the garage.  Inside the garage he found numerous items inside a bag, including ammonium nitrate pellets out of a cold pack, a torn up lithium battery, a Hamilton Beach blender, a bottle of lye, drain cleaner, crystal drain opener.  Detective Sanders identified State's Exhibit 20, the bag he found in the garage containing the above-described items.  Detective Sanders testified each of the items can be used in the production of methamphetamine.  Detective Sanders testified the significance of the blender is that it is commonly used to grind the pseudoephedrine pills.  Detective Sanders identified various other photographs of items discovered on August 13, 2014.

{¶21}  On cross-examination, Detective Sanders acknowledged Appellant was in a romantic relationship with Amanda Campanero and she stayed at the residence as well.  Detective Sanders testified he did not observe Appellant with a bag in his hand while Appellant was sitting on the

porch. He testified Amanda Campanero, Kevin Colville, Appellant, and others were also sitting on the porch at that time. Detective Sanders further admitted he did not see Appellant have any contact with the bag found in the garage containing the various items. He testified he had no evidence Appellant purchased the blender or used the blender.

{¶22} On redirect, Detective Sanders testified the house was set up to make methamphetamine. The Hamilton Beach blender box was found in the bedroom where Appellant and Campanero stayed.

{¶23} The State's final witness was Detective Chris Bowen. He also testified as to his responsibility for identifying and dismantling methamphetamine labs. He went to the Holaday Road residence to execute the search warrant on August 13, 2014. When he arrived he saw Kevin Colville in the kitchen. He later checked Appellant's bedroom. Inside the room he found pseudoephedrine, pseudoephedrine receipts, lithium batteries and personal property belonging to Appellant and Amanda Campanero. He also found miscellaneous personal items. He testified he found a plastic tote inside Appellant's bedroom which contained coffee filters, the blender box, and a Folger's coffee container. He reiterated the blender was found outside in the garage with white residue in it. He also found crushed Sudafed pills. Detective Bowen identified the following exhibits:

1) State's Exhibit 7, a photograph taken of two blister packs that contained pseudoephedrine laying on top of the dresser.

2) State's Exhibit 8, a photograph of a Wal-Mart bag in the bedroom hanging off the dresser which contained an empty box of pseudoephedrine.

3) State's Exhibit 10, a third receipt of pseudoephedrine purchase, dated August 12, 2014, from Kroger in Hillsboro.

4) State's Exhibit 11, a photograph showing an overview of the items on the dresser; an RX bag that contained a full box of pseudoephedrine that had six pills in it; and two blister packs containing 20 pseudoephedrine pills. He also explained pseudoephedrine is an active ingredient in the production of methamphetamine.

5) State's Exhibit 13, a photograph of items he found on top of the dresser in the bedroom. The photograph showed lithium batteries wrapped in a paper towel and part of a blister pack beside the pseudoephedrine pills.

6) State's Exhibit 14, two lithium batteries. He added lithium metal is an active ingredient needed to produce methamphetamine.

7) State's Exhibit 27, two blister packs that contained twenty pseudoephedrine pills found on top of the dresser.

{¶24} Detective Bowen testified that the items depicted in State's Exhibits 7, 8, 10, 11, 13, and 14 were all found in Appellant's bedroom. He collected the pseudoephedrine tablets, placed them in an evidence bag, and eventually took them to an evidence locker in the sheriff's office.

{¶25}   Detective Bowen testified he located two receipts inside the bedroom.[2]  A receipt dated August 11, 2014 from Kroger appeared to be inside Amanda Campanero's purse.  A receipt on top of the dresser dated August 12, 2014 was a purchase of pseudoephedrine made by Appellant. Bowen searched the rest of the residence and eventually went to the front porch.  Bowen also identified State's Exhibit 27, the evidence bag with methamphetamine from the porch which he transported to the evidence locker on August 13, 2014.

{¶26}   On cross-examination, Detective Bowen admitted that the August 12, 2014 receipt, attached to the bag, contained the pills in an unopened box.  He acknowledged the pills had never been used to manufacture.  He also acknowledged Exhibit 27, the two blister packs located on top of the dresser, had only nineteen pills because BCI tested one. He testified a discarded pseudoephedrine box was inside the Wal-Mart bag hanging on the dresser. He admitted that he did not know if the pills had come from Amanda Campanero's purchase or if they had been there for months.  He also testified he did not know whether the pills had been used in the manufacture of methamphetamine.

---

[2] Bowen testified regarding a computer program his office has in which one can track the purchase of pseudoephedrine.  The information is accessible to law enforcement.  A person can log on, look up a receipt, and see specifically who made the purchase.  Bowen used this technology to track the two receipts in Appellant's bedroom.  The name of this computer program was not correctly spelled when identified in the transcript.

{¶27} Detective Bowen further testified that no lithium had been extracted from the batteries. He acknowledged batteries may be used for lawful purposes and it is common for people to have batteries in their homes. He admitted he did not know who brought the batteries to the trailer. He admitted it was legal to purchase pseudoephedrine up to a certain amount each month.

{¶28} Detective Bowen testified Appellant's ID cards were on top of the dresser. He admitted other than the receipt tracing a single Sudafed purchase to Appellant, there was no other evidence that Appellant purchased any of the other items, brought them to the residence, or exercised control over them. He testified there was no active cook going on.

{¶29} Detective Bowen testified he escorted Appellant, Ms. Campanero, and another person from the bedroom to the porch. He didn't observe anything in Appellant's had. Deputy Antinore advised that he found a baggy where Appellant was seated on the porch after he left. Detective Bowen collected it.

{¶30} On redirect, Detective Bowen identified Exhibit 32, Appellant's purchase history. Appellant had purchased pseudoephedrine, or attempted to purchase it, 15 times in 8 months. At this point, the State asked for the relevant exhibits to be admitted and rested.

{¶31} Appellant's counsel then made a Rule 29 motion for acquittal. Counsel argued there was no evidence of intent to manufacture methamphetamine. Counsel pointed out the only item the State could prove was in Appellant's possession was the Sudafed purchased the day before. Furthermore, the Sudafed box was completely intact and had never been used for any purpose. Counsel argued Appellant had to have some conscious awareness that the other items of manufacture existed and he had to have taken some step towards completion of the manufacture of drugs. The State responded that Appellant was near the finished product and had receipts for the purchase. Appellant was discovered in the bedroom where his personal belongings were and he had been residing, with all the chemicals to make methamphetamine. The trial court overruled Appellant's motion.

{¶32} The defense case began with the testimony of Kevin Colville. He testified he rented the Holaday Road residence on August 13, 2014. He acknowledged he was currently serving a prison term after pleading to two charges of possession of chemicals for the manufacture of methamphetamine.

{¶33} Colville testified on August 13, 2014, he and Appellant had worked on the transmission of Appellant's truck. Appellant and Campanero

occasionally stayed in a bedroom at Colville's residence that was used for storage. Other people occasionally stayed overnight in that bedroom. Appellant had stayed more since his truck was broken.

{¶34} When the officers arrived, Colville was in the kitchen. Appellant and Campanero were in one of the bedrooms. Colville was taken out to the porch. Colville admitted he was the person engaged in the manufacture of methamphetamine as his residence. He testified that Appellant had never purchased chemicals to be used in the production of methamphetamine. Colville denied that Appellant provided the various items located at the residence, which included Damp-Rid, crystal Drano, lighter fluid, and pseudoephedrine. He wrote a letter from prison to let everyone know Appellant should not be blamed for his mistakes.

{¶35} On-cross-examination, Colville admitted he told Appellant he would "do anything to try to help him get out of [this]because it's not his fault." He admitted that he and Appellant had been communicating through letters and family members. He denied Appellant cooked meth with him. He admitted Appellant was at his residence on July 23, 2014 when the officers were previously there.

{¶36} Finally, Appellant testified. He gave his residence as a location in Peebles, Ohio. He admitted he moved around and sometimes stayed at

Colville's residence. Appellant testified on August 13, 2014, at the Holaday Road residence, he was present with Amanda Campanero, Kevin Colville, and 4 others. He said he had been chauffeuring people around all day, traveling to and from a parts store, and working on his truck. When the police arrived, he was in Mr. Colville's daughter's bedroom off the kitchen. He had stayed there from time to time.

{¶37} Appellant testified Detective Bowen and another officer brought them out. A third officer on the porch was keeping them in the area. Five people on the porch were lined up close together. Appellant testified he "made a scene", accusing someone else of setting them up. Therefore, he was taken to a patrol car.

{¶38} Appellant testified he did purchase Sudafed the day before. He was planning to give it to his girlfriend to trade for methamphetamine. He admitted he had a prior conviction for assembling chemicals. He admitted he used methamphetamine on August 13, 2014. Appellant specifically denied:

> 1) Bringing Damper-Rid to the residence, opening it, or using it;
>
> 2) Bringing Sudafed to the house;
>
> 3) Possessing crystal Drano, using it, or knowing it was present in the residence;

4) Being aware of the presence of the bottle of lighter fluid;

5) Creating any solvents;

6) Manufacturing methamphetamine;

7) Participating in the use or discarding of the previous meth
 lab; and,

8) Collaborating with Kevin Colville.

{¶39} On cross-examination, Appellant reiterated nobody was making meth. He knew that Colville cooked meth and had a meth lab at his house a few months prior. His pseudoephedrine was in the house, in Campanero's purse next to his ID. He testified he was aware pseudoephedrine is a necessary item to make meth.

{¶40} As we begin our analysis, Appellant has directed us to *State v. Seldon,* 8th Dist. Cuyahoga No. 98429, 2013-Ohio-819, where the defendant was charged with one count of assembly or possession of chemicals used for the manufacture of drugs and one count of carrying a concealed weapon subsequent to a lawful traffic stop. Seldon was driving his friend's truck and two others were riding with him. Pursuant to the stop, troopers located various items which can be used in the manufacture of a controlled substance. At trial, Seldon's father testified his son was going to look for work in the area at the time of his stop. Seldon testified some of the items in the truck were purchased by him that day for the purpose of work on

damaged or inoperable vehicles. He testified, in particular, to having matchbooks because he stamped them to advertise his services. He admitted 24 Sudafed pills were his, but a package of 96, and some starting fluid, were not his. He testified to having iodine in the vehicle to treat sores on his arm.

{¶41} Seldon further acknowledged trying methamphetamine, but testified it was years before, not one week before as a trooper had previously testified. He denied that the items in the truck were purchased for the purpose of illegally manufacturing methamphetamine. He also denied knowing how to manufacture methamphetamine or having done so in the past. Although the jury returned a guilty verdict, the appellate court held the state failed to prove by sufficient evidence that Seldon possessed the chemicals discovered with an intent to manufacture methamphetamine. The eighth district appellate court held at ¶ 21:

> "Under the clear requirements of R.C. 2925.041(A), the mere assembly or possession of chemicals that could be used to produce a controlled substance is not sufficient to prove the performance of the criminal act. *State v. Cumberledge,* 11th Dist. No. 2010-L-142, 2012-Ohio-3012. In addition to possessing the chemical, the state must further demonstrate a present intent on the part of the defendant to actually use the chemical in the future to produce the illegal drug. *Id.*
>
> * * *
>
> In most instances, proof of this intent will likely be based upon the defendant's completion of a subsequent act, such as an initial step in the manufacturing process." *Seldon, supra.*

{¶42} The eighth district court noted the only evidence of

Seldon's intent to manufacture was:

1) His possession of the confiscated chemicals;

2) Testimony from an agent that the chemicals were used in the red phosphorous method of cooking methamphetamine;

3) Testimony from another agent that based on the location, quantity, and combination, the seized products could be used to manufacture methamphetamine;

4) The fact the canine alerted to a narcotic in the truck after the stop; and,

5) Seldon's admission that he had used methamphetamine in the past. *Id.* at 22.[3]

{¶43} Appellant herein argues there is no evidence of intent to

manufacture. It is true that the State's case against Appellant herein is

largely circumstantial. It is well-established, however, that "a defendant

may be convicted solely on the basis of circumstantial evidence." *State v.*

*Wickersham,* ¶ 39, quoting *State v. Nicely,* 39 Ohio St.3d 147, 151, 529

N.E.2d 1236 (1988). "Circumstantial evidence and direct evidence

inherently possess the same probating value." *Jenks*, paragraph one of the

syllabus. "Circumstantial evidence is defined as '[t]estimony not based on

---

[3] Appellant also directs us to *State v. Morlock,* 20 N.E.3d 1212, 2014-Ohio- 4458, (9th Dist.) in which the ninth district appellate court held there was insufficient evidence to convict appellant for illegal manufacture of drugs and illegal assembly or possession of chemicals for the manufacture of drugs. However, our review of the case reveals its precise holding is that there was insufficient evidence to establish appellant committed the crimes on or about the date alleged.

actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * * ' " *Nicely*, 39 Ohio St.3d at 150, quoting Black's Law Dictionary (5th Ed. 1979) 221.

{¶44} Furthermore, the case at bar involves circumstantial evidence of intent. "Intent lies within the privacy of an individual's own thoughts and is not susceptible of objective proof." *Wickersham, supra,* at ¶ 30, quoting *State v. Garner,* 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995). So "intent 'can never be proved by the direct testimony of a third person.' " *State v. Moon,* 4th Dist. Adams App. No. 08CA875, 2009-Ohio-4830, ¶ 20, quoting *State v. Lott,* 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990). Rather it " 'must * * * be inferred from the act itself and the surrounding circumstances, including the acts and statements of the defendant surrounding the time of the offense.' " *Id.,* quoting *State v. Wilson,* 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-Ohio-2298, ¶ 41. But "persons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts." *Garner* at 60.

{¶45} By the end of the State's case, the jury had heard evidence that:

1) Detective Sanders has experience in identifying and dismantling methamphetamine labs. Appellant, Amanda Campanero, his girlfriend, and Kevin Colville were present at the Holaday Road residence when various items for the

manufacture of methamphetamine including ammonium nitrate pellets, a torn up lithium battery, a Hamilton Beach blender, a bottle of lye, a bottle of drain cleaner, and crystal Drano were located in the garage. Detective Sanders testified each of the items can be used in the production of methamphetamine. He also testified blenders are commonly used to grind pseudoephedrine pills for such purpose. He testified the residence was set up to make methamphetamine.

2) Detective Bowen also has experience in identifying and dismantling meth labs. In Appellant's bedroom he found pseudoephedrine, pseudoephedrine receipts, lithium batteries, and personal property of both Appellant and Amanda Campanero. He also found a plastic tote containing a Hamilton Beach blender box in the bedroom. He found lithium batteries wrapped in a paper towel on the dresser in the bedroom. He found two blister packs containing pseudoephedrine on top of the dresser. He explained that pseudoephedrine and lithium metal are active ingredients needed to produce methamphetamine. However, no active cook was going on when the officers arrived.

3) Detective Bowen also found two receipts in the bedroom, one dated August 11, 2014 in Amanda Campanero's purse, and one on top of the dresser dated August 12, 2014. The August 12, 2014 receipt was for a purchase of pseudoephedrine made by Appellant.

4) Exhibit 2, a white substance determined to be methamphetamine, and Exhibit 27, twenty white tablets containing pseudoephedrine, had been transferred to BCI for scientific testing and the chain of custody for the evidence had been preserved.

5) Deputy Antinore testified State's Exhibit 2 was a white powdery substance in a clear bag that he saw in Appellant's hand. He did not report the clear bag to anyone at the time for fear that Appellant would discard it. The bag was later recovered by Detective Bowen from the area where Appellant had been sitting on the porch.

4) Detective Sanders testified Appellant had been staying at the Holaday Road residence because he saw him there on July 23, 2014 and again on August 13, 2014.

5) Detective Bowen testified Exhibit 27 was the pseudoephedrine he located on top of the dresser.

6) Detective Bowen admitted other than the receipt of Appellant's Sudafed purchase, there was no other evidence Appellant purchased any of the other items, brought them to the residence, or exercised control over them.

7) Kevin Colville testified he was currently serving a prison term for possession of chemicals for the manufacture of methamphetamine. Appellant, Campanero, and others occasionally stayed in the bedroom where Appellant was located. He testified he was the person engaged in the manufacture of methamphetamine at his residence, but Appellant was not. He testified Appellant did not provide any of the chemicals found there.

8) Appellant testified he was present at the Holaday Road residence on August 13, 2014. He purchased Sudafed the day before to give to his girlfriend. He denied manufacturing methamphetamine. He denied bringing any of the chemicals to the house. He admitted using methamphetamine on August 13, 2014. He admitted he had a prior conviction for assembling chemicals. Appellant admitted he knew that Colville cooked meth and had done so before.

{¶46} The trial court instructed appropriately as follows:

"Whether an inference is made, rests entirely with you. Now, when considering circumstantial evidence, you may not draw one inference from another inference; but, you may draw more than one inference from the same facts and circumstances. In other words, you can't stack one inference upon another to reach a factual conclusion."

{¶47} Based on the foregoing, we find there was circumstantial evidence in this case supporting the conclusion that Appellant intended to manufacture methamphetamine. It is a logical inference that Appellant was familiar with the Holaday Road residence where various ingredients used to make methamphetamine were located. Colville and Appellant testified he stayed there on occasion. Detective Sanders saw Appellant there on July 23, 2014 and three weeks later on August 13, 2014.

{¶48} Appellant and Campanero were discovered by officers in a bedroom. Although Colville testified others stayed at the residence, the evidence demonstrates that Appellant had a significant connection to the bedroom where he was located on August 13, 2014. His identification cards and Campanero's purse were found in the room. The absence of evidence indicating that other individuals had recently stayed in the bedroom supports the inference that the batteries and pseudoephedrine located on top of the dresser, along with the tote bag containing the Hamilton Beach blender box, were present under Appellant's knowledge and control.

{¶49} Furthermore, Appellant testified he had used methamphetamine on the date of his arrest. He purchased Sudafed the day before for the purpose of obtaining more methamphetamine. Importantly, Appellant testified he was aware that Colville made methamphetamine.

{¶50}  More importantly, Deputy Antinore's testimony places Appellant with the finished product in his hand, the clear baggie containing the white powdery substance ultimately determined to be methamphetamine by Kelsey Degan.  Although Appellant denied manufacturing methamphetamine or knowing how to manufacture methamphetamine, and defense counsel cross-examined Deputy Antinore about why he did not immediately report seeing the bag in Appellant's hand, the jury was free to believe some, all, or none of the witnesses' testimony.  The jury apparently chose to discredit Appellant and his witness.  See *State v. Seal*, 20 N.E.3d 392, 2015-Ohio-4167, (4th Dist.), ¶ 34.  As cited above, "intent" is to be inferred from the act and surrounding circumstances. The evidence supports the inference that Appellant had engaged in the manufacture of methamphetamine, and therefore possessed an "intent" to manufacture, as the testimony was that he was seen with the finished product in his hand.

{¶51}  We acknowledge that this is a close case and we reiterate that the jury was in the best position to observe the witnesses and evaluate their credibility.  Notably, the jury sent out two questions during deliberations, indicating they took seriously their duty to evaluate the evidence and

Appellant's arguments.[4]  Having reviewed the entire record, weighed the

evidence, and considered the credibility of the witnesses as it arises from the

transcript, we find a rational basis exists in the record for the jury's decision.

We do not find this to be the exceptional case where the evidence weighs

heavily against conviction.  Nor do we believe Appellant's conviction is a

manifest miscarriage of justice.  As such, we overrule Appellant's second

assignment of error and affirm the judgment of the trial court.

## ASSIGNMENT OF ERROR THREE

### A.  STANDARD OF REVIEW

{¶52}  When reviewing a case to determine if the record contains

sufficient evidence to support a criminal conviction, we must "examine the

evidence admitted at trial to determine whether such evidence, if believed,

would convince the average mind of the defendant's guilt beyond a

reasonable doubt.  The relevant inquiry is whether, after viewing the

evidence in a light most favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime proven beyond a

reasonable doubt." *State v. Hollis,* 4th Dist. Pickaway No. 09CA9, 2010-

Ohio-3945, ¶ 20, citing *State v. Smith,* 4th Dist. Pickaway No. 06CA7,

2007-Ohio-502, at ¶ 33, quoting *State v. Jenks* at paragraph two of the

---

[4] However, we reiterate, as in *Wickersham, supra,* at Fn. 6, that "[T]his is not to suggest that a defendant's conviction is unsustainable if a jury does not submit a question to the trial court during deliberations."

syllabus. See, also, *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781 (1979).

{¶53} The sufficiency of the evidence test "raises a question of law and does not allow us to weigh the evidence," *Hollis,* at ¶ 21; *Smith* at ¶ 34, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). Instead, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Smith* at ¶ 34, citing *State v. Thomas,* 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356 (1982); *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

## B. LEGAL ANALYSIS

{¶54} Appellant next argues his conviction, pursuant to R.C. 2925.041was based on insufficient evidence. When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction. *Wickersham, supra,* at 27; *State v. Pollitt,* 4th Dist. Scioto No. 08CA3263, 2010-Ohio-2556, ¶ 15. " 'Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " *State v. Lombardi,* 9th Dist.

Summit No. 22435, 2005-Ohio-4942, ¶ 9, quoting *State v. Roberts*, 9th Dist. Lorain No. 96CA006462 (Sept. 17, 1997).  See, *State v. Chandler,* 4th Dist. Highland No. 14CA11, 2014-Ohio-5125, ¶12.   In the case sub judice, having found no merit to Appellant's argument that his conviction is against the manifest weight of the evidence, we  further find it is supported by sufficient evidence.  As such, we overrule Appellant's third assignment of error and affirm the judgment of the trial court.

### ASSIGNMENT OF ERROR ONE

### A.  STANDARD OF REVIEW

{¶55}  The standard of review for a Crim.R. 29(A) motion is generally the same as a challenge to the sufficiency of the evidence.  *Hollis, supra*, at ¶ 19.  See *State v. Hairston,* 4th Dist. Scioto No. 06CA3081, 2007-Ohio-3880, 2007 WL 2181535, at ¶ 16; *State v. Brooker,* 170 Ohio App.3d 570, 2007-Ohio-588, 868 N.E.2d 683, at ¶8.  Appellate courts must determine whether the evidence adduced at trial, if believed, supports a finding of guilt beyond a reasonable doubt.  See *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541; *State v. Jenkins,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

### B.  LEGAL ANALYSIS

{¶56}  Here Appellant contends the trial court erred by denying his

Rule 29 motion for acquittal, against arguing the State failed to prove intent. We have set forth above the analysis for the evaluation of a Crim.R. 29 motion is the same as the "sufficiency-of-the-evidence" analysis. We have found Appellant's conviction was supported by the manifest weight of the evidence, and elaborated that the manifest weight of the evidence necessarily includes a finding that sufficient evidence supports the conviction. As such, we need not engage in further analysis under this assignment of error. Appellant's argument hereunder is overruled. The judgment of the trial court is affirmed.

## ASSIGNMENT OF ERROR FOUR

### A. STANDARD OF REVIEW

{¶57} In *State v. Pulliam,* 4th Dist. Scioto No. 14CA3609, 2015-Ohio-759, ¶ 5, see *State v. Brewer,* 2014-Ohio-1903, 11 N.E.3d 317, we recently held that when reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2). *Brewer* at ¶ 33 ("we join the growing number of appellate districts that have abandoned the *Kalish* plurality's two step abuse-of-discretion standard of review; when the General Assembly reenacted R.C. 2953.08(G)(2), it expressly stated '[t]he appellate court's standard of review is not whether the sentencing court abused its discretion' "). See also *State v. Graham,* 4th Dist. Highland No. 13CA11,

2014-Ohio-3149, ¶ 31. R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that "the record does not support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law."

### B.  LEGAL ANALYSIS

{¶58}  Appellant argues the general felony sentencing provision of R.C. 2929.14(A)(3)(a), revised most recently by House Bill 234, effective March 23, 2015, conflicts with the internal sentencing provision of R.C. 2929.041.  On his conviction for manufacture of drugs, Appellant was sentenced to a five-year mandatory sentence, in accordance with the provision of R.C. 2929.041 which states:

> "Whoever violates this section is guilty of illegal assembly or possession of chemicals for the manufacture of drugs.  Except as otherwise provided in this division, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the third degree, and, except as otherwise provided in division (C)(1) or (2) of this section, division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.  If the offense was committed in the vicinity of a juvenile or in the vicinity of a school, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the second degree, and, except as otherwise provided in division (C)(1) or (2) of this section, division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.  If the violation of division (A) of this section is a felony of the third degree under this division and if the

chemical or chemicals assembled or possessed in violation of division (A) of this section may be used to manufacture methamphetamine, there either is a presumption for a prison term for the offense or the court shall impose a mandatory prison term on the offender, determined as follows:

(1) Except as otherwise provided in this division, there is a presumption for a prison term for the offense.  If the offender two or more times previously has been convicted of or pleaded guilty to a felony drug abuse offense, except as otherwise provided in this division, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than two years.  If the offender two or more times previously has been convicted of or pleaded guilty to a felony drug abuse offense and if at least one of those previous convictions or guilty pleas was to a violation of division (A) of this section, a violation of division (B)(6) of section 2919.22 of the Revised Code, or a violation of division (A) of section  2925.04 of the Revised Code, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than five years.”

Pursuant to the above statute, Appellant was sentenced to a five-year mandatory prison term due to having two prior convictions for felony drug abuse offenses.  However, recently revised R.C. 2929.14 (A)(3)  provides:

“(a) For a felony of the third degree that is a violation of section 2903.06,  2903.08,  2907.03,  2907.04, or  2907.05 of the Revised Code or that is a violation of section 2911.02 or 2911.12 of the Revised Code if the offender previously has been convicted of or pleaded guilty in two or more separate proceedings to two or more violations of section  2911.01, 2911.02,  2911.11, or  2911.12 of the Revised Code, the prison term shall be twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months.

(b) For a felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies, the prison term shall be nine, twelve, eighteen, twenty-four, thirty, or thirty-six months."

{¶59}  Appellant argues R.C. 2929.14 does not list R.C. 2925.041 as an offense excluded from the thirty-six month range.  As such, the two statutes are in conflict.  Appellant urges that statutes relating to the same general subject matter must be read *in pari materia* and viewed in a manner to carry out the legislative intent of the sections.

{¶60}  Appellee responds that there is no conflict between the statutes. Appellee cites R.C. 2929.13(C), which states:

"Except as provided in division (D), (E), (F), or (G) of this section, in determining whether to impose a prison term as a sanction for a felony of the third degree or a felony drug offense that is a violation of a provision of Chapter 2925 of the Revised Code and that is specified as being subject to this division for purposes of sentencing, the sentencing court shall comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code and with section 2929.12 of the Revised Code."

Appellee points out that none of the language contained in subsections (D, (E), (F), and (G) of R.C. 2929.13 specifically refer to R.C. 2925.041 or 2929.14.  As such, the court can assume the intent is for R.C. 2925.041 to be a "stand alone" offense.

{¶61}  The Twelfth District Court of Appeals recently considered the argument that the statutes are in conflict in *State v. Young,* 31 N.E.3d 178,

2015-Ohio-1347.  The Twelfth District Appellate Court pointed out the

statutory provisions listed in R.C. 2929.14(A)(3)(a) refer to certain vehicular

offenses, certain sexual offenses, and robbery and burglary.  Importantly,

illegal assembly of chemicals for the manufacture of drugs is not an offense

listed in R.C. 2929.14(A)(3)(a).  Thus, pursuant to R.C. 2929.14(A)(3)(a)

and (b), appellant's maximum sentence for violating R.C. 2925.041 would be

36 months in prison.  As here, the record showed that Young was previously

convicted of "illegal manufacture of drugs, aggravated possession of drugs"

and had a prior conviction for illegal assembly of chemicals for the

manufacture of drugs under R.C. 2925.041(A).  As a result, pursuant to R.C.

2925.041(C)(1), appellant's mandatory sentence for violating R.C. 2925.041

would be 60 months (5 years) in prison.

{¶62}  The *Young* court observed in *State v. Shaffer,* 9th Dist. Medina

Nos. 12CA0071-M, 12CA0077-2014-Ohio-2461, the decision cited by the

state, that:

> "[T]he defendant entered a plea of no contest to illegal
> assembly of chemicals for the manufacture of drugs and was
> sentenced to five years in prison under R.C. 2925.041(C)(1).
> The Ninth Appellate District upheld the sentence on the ground
> that 'the General Assembly intended R.C. 2925.041(C)(1) to be
> a specific exception to the general felony sentencing scheme set
> forth in R.C. 2929.14,' and thus, R.C. 2925.041(C)(1) prevailed
> over R.C. 2929.14." *Id.* at ¶42.

{¶63}  The *Shaffer* court held in its decision:

"Here, similar to the facts in *Sturgill,* Ms. Shaffer's sentence for a felony of the third degree was increased from thirty-six months to five-years because R.C. 2925.041(C)(1) specifically mandates imprisonment of 'not less than five-years' if certain conditions precedent are met.  Additionally, as indicated above, both R.C. 2929.14 and R.C. 2925.041 were amended by H.B. 86 on September 30, 2011.  As a result, we conclude that if the General Assembly wished to amend R.C. 2925.041(C)(1), in order to remove the penalty enhancement language, it would have done so at that time.  Instead, the General Assembly amended R.C. 2925.041(C)(1) to state that the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than five years if 'two or more times previously [the offender] has been convicted of or pleaded guilty to a felony drug abuse offense and if at least one of those previous convictions or guilty pleas was to a violation of division (A) of this section, a violation of division (B)(6) of section 2919.22 of the Revised Code, or a violation of division (A) of section 2925.04 of the Revised Code[.]' CA0077-M (Emphasis added.) (Italicized words indicate changes made to R.C. 2925.041(C)(1) in H.B. 86.) *Shaffer,* at ¶ 14."

{¶64} The *Young* court noted in addressing the conflict between the statutes and seeking guidance with this matter, the *Shaffer* court relied on the 12th district's decision in *State v. Sturgill,* 12th Dist. Clermont Nos. CA2013-01-002 and CA2013-01-003, 2013-Ohio-4648.  However, on March 23, 2015, the Twelfth District Appellate Court explicitly overruled *Sturgill* and its progeny in *State v. Burkhead,* 12th Dist. Butler No. CA2014–02–028, 2015-Ohio-1085.  The holding and analysis in *Sturgill* was no longer good law in the 12th appellate district.

{¶65} The *Young* court also considered the arguments made in *State v. Dunning,* 12th Dist. Warren Nos. CA2013-05-048, CA2013-06-58, 2014-Ohio-253, cited by the appellant. In *Dunning,* the defendant was first sentenced to five years in prison following his 2013 guilty plea to illegal assembly of chemicals for the manufacture of drugs. While his appeal was pending, the trial court resentenced the defendant to three years in prison. On appeal, this court addressed sua sponte whether the trial court had jurisdiction to resentence the defendant while his original appeal was still pending, and held that the trial court did not. Thereafter, the Twelfth District Court held:

> "That said, issues remain regarding the trial court's original decision sentencing Dunning to an aggregate five-year prison term. After a thorough review of the record, we find the trial court erred by sentencing Dunning to serve five years in prison resulting from his guilty plea *189 to illegal possession or assembly of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), a third-degree felony. At the time of his original sentencing hearing, the maximum prison sentence for a third-degree felony was three years in prison. Therefore, the trial court's original sentencing decision in Case No. CA2013-05-048 is reversed and this matter is remanded for the sole purpose of resentencing Dunning according to law. Dunning's conviction is affirmed in all other respects." *Id.* at ¶ 11.[5]

{¶66} The *Young* court held:

---

[5] The defendant in Dunning was sentenced in 2013. Thus, the two statutory provisions at issue in the case at bar, to wit, R.C. 2929.14 and 2925.041(C)(1) as revised by H.B. 86, were also applicable in *Dunning*. *Young, supra*, at ¶ 45.

"R.C. 2925.041(C)(1) sets forth a specific sentencing scheme for third-degree felonies involving felony drug abuse offenses and is thus specific, rather than general, in nature. See *Shaffer, supra,* at ¶ 14-15. Likewise, R.C. 2929.14(A)(3), which sets forth a specific, two-tiered sentencing scheme for third-degree felonies, is specific, rather than general, in nature. See *State v. Owen,* 11th Dist., 2013-Ohio-2824, 995 N.E.2d 911, ¶ 27-28. The two statutes are clearly in conflict since the maximum sentence authorized for a third-degree felony drug offense under R.C. 2925.041(C)(1) is 60 months, while the maximum sentence allowed for third-degree felonies, other than those listed in R.C. 2929.14(A)(3)(a), is 36 months. Yet, R.C. 2925.041(C)(1) also incorporates by reference R.C. 2929.14 when the former states, "the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree * * *." *Young,* at ¶43.

**{¶67}** *Young* also referenced *Owen, supra*, in which the Eleventh Appellate District emphasized the fact that one of the overriding purposes of felony sentencing under H.B. 86 is to " 'punish the offender using the minimum sanctions that the court determines accomplish those purposes.' " *Owen* at ¶ 30, quoting R.C. 2929.11. The *Owen* court found that the foregoing language "evinces the legislative intent that sentencing courts are to use the minimum sanctions available to accomplish the purposes of felony sentencing." *Young*, at ¶4. Furthermore, *Young* recognized the "rule of lenity" which applies where there is an ambiguity in a statute or a conflict between statutes. *State v. Sheets,* 12th Dist. Clermont No. CA2006-04-032, 2007-Ohio-1799, ¶ 29. "The rule of lenity is codified in R.C. 2901.04(A) which provides in relevant part that "sections of the Revised Code defining

offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." *Young,* at ¶ 48. Under the rule of lenity, "a court will not interpret a criminal statute so as to increase the penalty it imposes on a defendant where the intended scope of the statute is ambiguous." *Sheets* at ¶ 28.

{¶68} The *Young* court concluded as follows:

"In light of our decisions in *Dunning* and *Burkhead,* the fact this court overruled *Sturgill* and its progeny, and the rule of lenity, we find that appellant should have been sentenced under R.C. 2929.14(A)(3)(b), and not under R.C. 2925.041(C)(1). The trial court's decision to sentence appellant to 60 months in prison under R.C. 2925.041(C)(1) is therefore clearly and convincingly contrary to law and appellant's sentence must be vacated. See R.C. 2953.08(G)(2). On remand, the trial court should exercise its discretion in resentencing appellant to one of the prison terms set forth in R.C. 2929.14(A)(3)(b) up to 36 months in prison." *Id.* at ¶ 49.

{¶69} We have located no other cases beyond those cited which address the conflict issue raised by Appellant. Based on the persuasive reasoning set forth in *Young,* we find Appellant's fourth assignment of error has merit. We find his five-year mandatory sentence under R.C. 2925.041(C) is clearly and convincingly contrary to law. As such, we remand the matter for resentencing in accordance with this law as set forth in R.C. 2929.14(A)(3)(b).

JUDGMENT AFFIRMED IN
PART, REVERSED IN PART,
AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS
OPINION.

Harsha, J., concurring in part and dissenting in part:

**{¶70}** I respectfully dissent from the majority's disposition of the fourth assignment of error and would affirm the trial court's judgment and sentence *in toto*.

**{¶71}** To the extent that Clark contends R.C. 2929.14(A)(3) should prevail over R.C. 2929.041(C)(1) because the former has been amended more recently that the latter, he is mistaken. Although R.C. 2929.14 has been more recently amended, those changes did not affect R.C. 2929.14(A)(3). As the court in *State v. Young, supra*, noted in footnote 4, "The 2012 amendment did not affect or modify R.C. 2929.14(A)(3)." Neither did the 2015 amendments found in HB 234, effective March 23, 2015, which dealt with firearms legislation. The only change to R.C. 2929.14(A)(3) was limited to striking the word "silencer" and the substitution of "suppressor" in its place.

**{¶72}** Thus both the relevant sections of R.C. 2929.14(A)(3) and R.C. 2929.041(C) were adopted at the same time in 2011 in HB 96. There is no basis for claiming R.C. 2929.14(A)(3) prevails because it was adopted later than R.C. 2929.041(C).

**{¶73}** And as Clark points out in his brief at page 25, R.C. 2929.14 is a "general felony sentencing provision," especially when compared to R.C.

2929.041(C).  Thus, the provisions of R.C. 2929.041(C), which is a more specific pro-statute, should prevail.

{¶74}  Based upon those facts and the rationale expressed by the Ninth Appellate District in *Shaffer, supra*, I would affirm the trial court's judgment of conviction and its sentence in its entirety.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:        Concurs in Judgment and Opinion.
Harsha, J.:      Concurs in Part and Dissents in Part with Opinion.


For the Court,


BY:      _____
              Matthew W. McFarland,
              Administrative Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**