[Cite as *State v. Seldon*, 2013-Ohio-819.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   98429

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL SELDON

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-548201

**BEFORE:**   E.A. Gallagher, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**   March 7, 2013

**ATTORNEY FOR APPELLANT**

Timothy F. Sweeney
Law Office-Timothy Farrell Sweeney
The 820 Building, Suite 430
820 West Superior Avenue
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    John D. Toth
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} Michael Seldon appeals from his conviction in the Cuyahoga County Court of Common Pleas. Seldon argues that the state violated his Fourth Amendment rights, that the trial court permitted plain error, that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence and that his attorney rendered ineffective assistance. Finding merit to the instant appeal, we reverse and remand.

{¶2} This case arose out of a traffic stop that occurred in Solon, Ohio on March 12, 2011. On that date, Seldon, a 29 year-old male, was driving an old pick-up truck that belonged to his friend, Eric Smeby, who resided in Millersburg, Ohio. With Seldon in the vehicle that evening was Tarin Trippett and the two were on their way to Warren, Ohio to pick up another friend.

{¶3} On March 21, 2011, the Cuyahoga County Grand Jury indicted Seldon for one count of assembly or possession of chemicals used to manufacture methamphetamine and one count of carrying a concealed weapon for a homemade sword. The case proceeded to a jury trial and the state presented the testimony of Officer Troyer and Special Agent Gary Miller from the Ohio Attorney General's Bureau

of Criminal Investigations and Identification.

{¶4} Officer Matthew Troyer, a K-9 police officer with the Solon Police Department, testified that he noticed Seldon's vehicle as it was traveling in Solon on U.S. Route 422 and that the back license plate was not illuminated. Officer Troyer testified that he followed the vehicle for a short distance, during which time he noticed it travel off road to the berm, return to the road and then back onto the berm. Officer Troyer initiated a traffic stop and, because it was nighttime, he called for a second officer.

{¶5} Officer Troyer testified that when he spoke with Seldon at the vehicle's driver window, Seldon stated that he was having trouble with the driver's door that would suddenly open and that was why he drove off of the road. Officer Troyer then decided to deploy his drug-sniffing dog, K-9 Striker, to walk around the vehicle. According to Officer Troyer, K-9 Striker is trained to alert to the smell of marijuana, cocaine, heroin, ecstasy and methamphetamine. After the dog walked around the truck, he alerted to the passenger side door seat.

{¶6} Officer Troyer stated that after Striker alerted, he had Seldon and Trippett exit the vehicle and sit in the back of the patrol car. The officers then conducted a thorough search of the vehicle. The officers did not find any illegal drugs but did recover items that Officer Troyer testified could be used in the manufacture of

methamphetamine. The officers recovered the following: (1) one retail package of 96 Sudafed, as sold in a drug store and a plastic baggie with 24 additional Sudafed pills, (2) two, four-bottle retail packages of Heet brand gas-line antifreeze/water remover, (3) one can of automotive starting fluid, (4) 27 boxes of matches, (5) four small bottles of iodine, three of which were from CVS and one from Rite-Aid and (6) one bottle of Brakleen brake parts cleaner. Police also found an old, homemade sword behind the driver's seat.

{¶7} Officer Troyer arrested Seldon for suspicion of manufacturing a controlled substance and carrying a concealed weapon and cited Seldon for traffic violations and open container law. Officer Troyer testified that after being taken into custody, Seldon acknowledged that some of the seized items belonged to him and were for legitimate purposes. Specifically, Seldon told Officer Troyer that the iodine was for treating sores on his body, that the brake cleaner was for the brakes on the truck that were problematic, that he would use the Heet to help start a wood-burning fireplace and that the matches were to ignite the liquid Heet and to advertise for work. Officer Troyer also testified that Seldon admitted to trying methamphetamine one week prior.

{¶8} Agent Miller testified against Seldon as an expert witness in the field of methamphetamines. Agent Miller gave a presentation informing the jury about methamphetamine and explained the many aspects of methamphetamine use. Agent

Miller then opined as to the method of "cooking" that would have been used with the products seized from Seldon's truck. Agent Miller's opinion was that the items would have been used to cook methamphetamine using the "Red P, Red Phosphorous, of HA, the Hydraulic Acid method." Agent Miller explained the four steps of the process and applied the following exhibits to the steps: pseudoephedrine and Liquid Heet are needed for step one, Iodine, matches and brake cleaner are used for step two, brake cleaner is used again for step three and step four, which required salt, acid and hydrogen peroxide. Agent Miller stated that salt, acid and hydrogen peroxide were all that were chemically missing to make the methamphetamine.

{¶9} Agent Miller also stated that he used the factors of location, quantity and combination to determine whether legal items are being used legally or illegally.

{¶10} In response, both Seldon and his father, Michael Seldon, Sr., testified for the defense. Michael Seldon, Sr. testified that on the day of his son's arrest, Seldon was going to Millersburg to find a job and that he had given his son food and money for gas. Michael Seldon, Sr. stated that his son was looking for work such as drywall, construction and automotive repair.

{¶11} Seldon testified on his own behalf and explained that some of the items found in the truck belonged to him and that he purchased many of the items that day. Seldon stated that the Heet and Brackleen were needed for work he planned on doing

down in Holmes County, particularly with respect to damaged or inoperable vehicles. Seldon testified that he purchased the matchbooks because he stamps them and uses them to advertise his services. Seldon admitted that the 24 Sudafed pills were his, but testified that the retail box of 96 pills and the starting fluid were not his. Seldon testified that he purchased the iodine to treat sores on his arm.

{¶12} Seldon acknowledged telling Officer Troyer about having tried methamphetamine one time, but that it was not a week prior to his arrest, it was years ago. Seldon reported that he never manufactured methamphetamine, that he does not know how to manufacture methamphetamine and that none of the items recovered from the truck were intended for use in the manufacture of methamphetamine.

{¶13} The jury returned a verdict of guilty of assembly or possession of chemicals used to manufacture methamphetamine and not guilty of carrying a concealed weapon. The court sentenced Seldon to 18 months of community control under the supervision of the Adult Probation Department.

{¶14} Seldon appeals, raising the following six assignments of error:

Assignment of Error I

The deployment by Solon police of a drug-sniffing dog to detect for illegal drugs in the subject vehicle violated Seldon's rights under Article I, Section 14 of the Ohio Constitution because the Solon police lacked any basis whatsoever for believing, and had no reasonable suspicion, that the vehicle's occupants had any involvement with drugs such as would justify escalating a routine traffic stop into a search for illegal drugs.

## Assignment of Error II

It was plain error for the trial court to permit the State's "expert" witness to offer an opinion that Seldon had the required unlawful intent to manufacture methamphetamine and was guilty of the offense.

## Assignment of Error III

Michael Seldon's conviction is based on evidence that is insufficient as a matter of law, in violation of Seldon's rights to due process and a fair trial as guaranteed by Article I, Sections 10 and 16 of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution.

## Assignment of Error IV

The trial court erred in denying Seldon's motions for judgment of acquittal made at the conclusion of the State's case, and again when all the evidence was presented, because the evidence failed to establish that Seldon had the intent to manufacture methamphetamine.

## Assignment of Error V

Michael Seldon's conviction is against the manifest weight of the evidence.

## Assignment of Error VI

Seldon's trial counsel provided ineffective assistance of counsel by: (1) failing to seek suppression of the evidence recovered from the vehicle as being obtained in violation of Seldon's rights under the Ohio Constitution; and (2) failing to object and seeking a mistrial and/or to strike the improper opinion of the State's expert that Seldon had the required unlawful intent to manufacture methamphetamine and was guilty of the offense.

**{¶15}** Because we find Seldon's third and fourth assignments of error dispositive of the instant appeal, we shall address them out of order.

{¶16} The standard of review with regard to the sufficiency of the evidence is set forth in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), as follows:

> Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

{¶17} *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, in which the Ohio Supreme Court held:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Citation omitted.)

{¶18} In the present case, the jury found Seldon guilty of one count of Assembly or Possession of Chemicals used to Manufacture Controlled Substance, which, pursuant to R.C. 2925.041(A) provides as follows:

> No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.

{¶19} Thus, in accordance with the statute, the state has the burden of production of three elements: (1) knowingly assemble or possess one or more chemicals, (2) that

may be used to manufacture a controlled substance in schedule I or II, (3) with the intent to manufacture a controlled substance in violation of R.C. 2925.04.

{¶20} It is undisputed that the state met its burden of production on the first two elements. Seldon admittedly possessed pseudoephedrine, iodine, matches, starter fluid, brake cleaner and liquid HEET when Officer Troyer searched the vehicle but denied ownership of some of these items. Also, the parties stipulated that methamphetamine is a schedule II drug and Agent Miller testified that the chemicals in Seldon's possession are some of those necessary to make methamphetamine using the red phosphorous method, but that additional products and equipment are necessary. However, the state failed to prove, by sufficient evidence, that Seldon possessed the above-listed chemicals with the intent to manufacture methamphetamine.

{¶21} Under the clear requirements of R.C. 2925.041(A), the mere assembly or possession of chemicals that could be used to produce a controlled substance is not sufficient to prove the performance of the criminal act. *State v. Cumberledge*, 11th Dist. No. 2010-L-142, 2012-Ohio-3012. In addition to possessing the chemical, the state must further demonstrate a present intent on the part of the defendant to actually use the chemical in the future to produce the illegal drug. *Cumberledge*.

> In most instances, proof of this intent will likely be based upon the defendant's completion of a subsequent act, such as an initial step in the manufacturing process. However, in some situations, the "intent" element can be satisfied through proof of the defendant's prior production of the

controlled substance. *Id.*

{¶22} In the present case, the state presented the following series of inferences to demonstrate Seldon's alleged intent to manufacture methamphetamine:

1. Possession of the above-listed chemicals.

2. Testimony from Agent Miller that the seized chemicals are all used in the red phosphorous method of cooking methamphetamine.

3. Agent Miller's opinion based on a location, quantity and combination theory, that the seized products could be used to manufacture methamphetamine.

4. That K-9 Striker alerted to a narcotic in the vehicle and

5. Seldon's admission that he had tried methamphetamine in the past.

{¶23} It is the state's argument that this evidence, when viewed in the light most favorable to the state, showed an intention to manufacture methamphetamine. In putting forth its case, the state argued that mere possession and the ability to manufacture methamphetamine from the possessed chemicals is enough to infer an intent to manufacture. We find this erroneous and insufficient to support a conviction for Assembly or Possession of Chemicals used to Manufacture Controlled Substance.

{¶24} In cases throughout Ohio where convictions for Assembly or Possession of Chemicals used to Manufacture Controlled Substance were upheld, the state produced evidence from which a jury could conclude beyond a reasonable doubt that the requisite intent to manufacture existed. Such evidence included the following: That the

defendant knew how to manufacture methamphetamine, *State v. Stevenson,* 5th Dist. No. 09CA16, 2010-Ohio-2060; that the defendant made admissions that he intended to manufacture and/or had participated in the manufacture of methamphetamine, *State v. Smith*, 4th Dist. No. 09CA29, 2010-Ohio-4507; that the defendant's prior acts or statements of accomplices and/or other witnesses, demonstrated the defendant's knowing participation in the manufacture of methamphetamine, *Cumberledge, supra*; the defendant, in addition to chemicals, possessed the actual physical equipment needed to manufacture methamphetamine, such as beakers, filters, tubing, electrical tape, copper fittings, a heat source, etc., *State v. Throckmorton*, 4th Dist. No. 08CA17, 2009-Ohio-5344, *reversed on other grounds*; the defendant possessed or had known access to a methamphetamine lab, or had injuries consistent with work in a methamphetamine lab, *State v. Downing*, 12th Dist. No. CA2009-09-036; the defendant possessed quantities of the drug, or known drug delivery devices, i.e., syringes, contemporaneous with his possession of the chemicals, *Throckmorton, supra.*

{¶25} This court is not requiring all of the above, we are just referencing the many methods the state may use to prove an intent on the part of the accused to manufacture methamphetamine, none of which were utilized by the state. The state's entire case is based on Seldon's possession of some legally possessed items. It has set forth no evidence that Seldon completed a subsequent act beyond mere possession, no

evidence of Seldon's prior production of the controlled substance and no evidence that Seldon knew how to manufacture the drug. *See Cumberledge, Stevenson.* In fact, Seldon testified that he did not know how to manufacture methamphetamine.

{¶26} Based on the foregoing, we find that the state failed to present sufficient evidence that Seldon intended to manufacture methamphetamine with the seized chemicals. As such, his conviction and sentence must be vacated.

{¶27} Because we found Seldon's third and fourth assignments of error to have merit, we decline to address his remaining assigned errors.

{¶28} This case is reversed and remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA A. BLACKMON, J., CONCUR