[Cite as *State v. Tackett*, 2019-Ohio-5188.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-A-0052** |
| KAREN MARIE TACKETT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2016 CR 00243.

Judgment: Reversed; conviction vacated; remanded.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Thomas Rein*, 820 West Superior Avenue, Suite 800, Cleveland, OH 44113 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Karen Marie Tackett ("Tackett"), appeals from the May 17, 2018 judgment entry of the Ashtabula County Court of Common Pleas, finding her guilty, following a jury trial, on five counts related to the production and distribution of drugs. Following this finding, the trial court sentenced Tackett to an aggregate total of 48 months in prison. For the following reasons, we hereby reverse the judgment and vacate Tackett's conviction.

{¶2}    Tackett was indicted on five counts related to the production, possession, and distribution of drugs: (1) illegal assembly or possession of chemicals for the manufacture of drugs, with firearm specification; (2) trafficking in heroin; (3) possession of heroin; (4) possession of drugs; and (5) possession of criminal tools.  A three-day jury trial was held beginning on May 15, 2018, and the following evidence and testimony was produced at trial.

{¶3}    The state called three witnesses: Nick Pinney, Matthew Johns, and Bryan Rose.  Tackett called one witness: Joseph Tomsic.  Matthew Johns was also called by the state on rebuttal.

{¶4}    Deputy Nick Pinney of the Ashtabula County Sheriff's Office testified that he was watching Tackett's residence on the night of February 1, 2016, because a known resident at the address, Joseph Tomsic ("Tomsic"), was suspected of trafficking in drugs and manufacturing methamphetamine.  Deputy Pinney was observing the residence while Deputy Matthew Johns secured a warrant to search the property.  While observing the residence, he saw a man matching Tomsic's description leave the residence with another individual in a vehicle believed to be driven by Tomsic.  Deputy Pinney pursued the vehicle and executed a traffic stop because he knew that Tomsic had a suspended driver's license and nine active warrants for his arrest.

{¶5}    Deputy Pinney observed substantial movement from both the driver and passenger for an extended period of time before the car finally pulled over.  Once Tomsic was removed from the vehicle and placed in a police car, Tackett was identified as the passenger.  The car contained various items associated with drug use and trafficking, including hypodermic syringes, brown liquid and white powder that both later tested

2

positive for heroin, a digital scale, burnt spoons, and a metal canister containing a crystal rock-like substance that later tested positive for methamphetamine. Tackett also had a syringe in her purse in plain view to Deputy Pinney. After being placed in a police cruiser, Tomsic allegedly dropped a second metal canister from inside his pant leg onto the floor of the backseat of the police cruiser. The metal canister contained a substance that tested positive for heroin. Various photographs taken by Deputy Pinney of the items in the vehicle were also introduced into evidence without objection.

{¶6} Next, Deputy Matthew Johns testified regarding the traffic stop and subsequent search of Tackett's residence. Deputy Johns stated that he was present for the arrest of Tomsic and the inventory taken from the inside of the vehicle. He also observed the second metal canister that appeared in the backseat of the police cruiser after Tomsic was placed inside.

{¶7} In addition to corroborating Deputy Pinney's testimony regarding the traffic stop and arrest, Deputy Johns testified to finding various manufacturing tools and drug paraphernalia throughout Tackett's residence after obtaining a search warrant. The search warrant was obtained after Deputy Johns received information from an informant regarding illegal activity at the residence. The items found at the residence were photographed by Deputy Johns, and the photographs were introduced into evidence without objection.

{¶8} Also, Deputy Johns testified about his extensive experience handling drug trafficking cases. He stated that his previous training included learning how to manufacture methamphetamine in a controlled environment and that he was able to identify the items found at the residence to be known chemicals used to manufacture

3

methamphetamine. Deputy Johns photographed text messages contained on Tomsic's phone from the month prior to the arrest as well. These photographs were submitted as evidence, and Deputy Johns explained from his extensive experience that the slang language contained therein was known code for drug trafficking. On cross examination, Deputy Johns confirmed that his informant leading to seeking a warrant to search the residence was a confidential informant whose initials were J. H. ("J.H.").

{¶9} The state's final witness was Detective Bryan Rose. Detective Rose's primary testimony was with regard to Tackett and Tomsic's relationship and reputation over the time in which Detective Rose was aware of them. The following exchange was offered at trial:

> Q. Now, via a channel of information that's coming through the patrol division and et cetera, had you ever heard the names Joseph Tomsic and Karen Tackett?
>
> A. I did.
>
> Q. And when did you recall first hearing those two names?
>
> A. Karen Tackett, in 2000, her and Darren Tackett were still together at the time. I've been employed with the Sheriff's Department since 1995, so the - - and then with Joe Tomsic, it started in I think it was late 2011, early part of 2012.
>
> Q. What do you mean? What started in 2011-2012?
>
> A. When I would encounter Karen Tackett and Joe Tomsic, was starting in that time period.
>
> Q. And based on what information? In 2011-2012, what information were you receiving regarding those two names?
>
> A. That they were involved in trafficking, manufacturing methamphetamines, heroin. They were taking stolen property in exchange for payment for those items.

After counsel for Tackett objected to the specific acts of trafficking, manufacturing, and receiving stolen property being named by the witness, the trial court struck the entire question and answer, instructing the jury to disregard it. Immediately thereafter, the state offered the following, vaguer version of the same line of questioning:

> Q. In 2011 and 2012, you had information regarding Joseph Tomsic and Karen Tackett that you had received, correct?
>
> A. Correct.
>
> Q. And was that in regards to criminal activity?
>
> A. That is correct.
>
> Q. And was it in regards to criminal activity for Joseph Tomsic only?
>
> A. No. Both.
>
> Q. And from 2011 to 2012, when you had first started receiving that information, did it end just in that short time period, or did it continue through February of 2016.
>
> A. It continued through February of 2016.

{¶10} At the end of the state's case-in-chief, Tackett's defense counsel moved the court for a Rule 29 acquittal. The trial court denied the motion, stating there was sufficient evidence for a jury to convict on each of the five counts.

{¶11} For Tackett, defense counsel called Tomsic as a witness. He testified regarding his current incarceration, his relationship with Tackett over the past decades, his own criminal history, and the events leading up to and during the night of the traffic stop. Tomsic admitted that he trafficked drugs during the time he lived with Tackett, and he took responsibility for all the items found during the traffic stop and inside the Tackett residence during the search. He stated that Tackett had no involvement with his drug trafficking. Tomsic also insisted on cross examination that he accepted responsibility for

5

the second metal canister containing heroin that officers found on the floor in Deputy Pinney's cruiser after Tomsic was placed in the backseat. After being shown the contradictory narrative report that was prepared by Deputy Johns immediately following the incident, wherein Tomsic denied the container was his, Tomsic insisted that the report was incorrect.

{¶12} Tomsic also testified about J.H., the confidential informant for Deputy Johns, who was residing with Tackett and Tomsic prior to the night of the traffic stop and search. He confirmed that J.H. was asked to move out of the residence in the days before the search for allegedly stealing lottery tickets from Tomsic. Tomsic testified that, on the night of the search, a window was kicked out leading to the basement where J.H. was living in the residence. Further, Tomsic testified that the reason for his departure from the residence with Tackett on February 1, 2016—which led to Deputy Pinney initiating the traffic stop—was his intention to find and "retaliate" against J.H. for the alleged theft and breaking of the basement window.

{¶13} On rebuttal questioning following the testimony from Tomsic, Deputy Johns recalled examining the metal canister from the backseat police cruiser in which Tomsic was placed, recognizing the contents to be heroin, and asking whether the backseat was empty prior to the arrest, which was confirmed by Deputy Pinney. He then testified that he questioned Tomsic, who stated, "Man, that ain't mine." This contradicted Tomsic's testimony and was corroborated by the narrative report submitted by Deputy Johns immediately following the arrest.

{¶14} After hearing the testimony and reviewing the evidence submitted by the parties, the jury returned a verdict of guilty against Tackett on each of the five counts.

The jury did not find guilt with regard to the firearm specification contained in count one. Following a polling of the jury at Tackett's request, the trial court referred Tackett to the Department of Adult Probation for a presentence evaluation.

{¶15} At the sentencing hearing on June 18, 2018, the trial court reviewed, among other things, a presentence report and the sentencing guidelines contained in R.C. 2929.11 and 2929.12. Considering all of the aforementioned, the trial court ordered the following sentence for each charge:

> Count One: Illegal Assembly or Possession of Chemicals for the Manufacture of Methamphetamine (R.C. 2925.041) - 30 months.
>
> Count Two: Trafficking in Heroin (R.C. 2925.03) - 6 months.
>
> Count Three: Possession of Heroin (R.C. 2925.11) - merged for sentencing.
>
> Count Four: Aggravated Possession of Drugs (R.C. 2925.11) - 6 months.
>
> Count Five: Possessing Criminal Tools (R.C. 2923.24) - 6 months.

{¶16} In addition, the trial court ordered the sentences for counts two, four, and five to be served consecutively with one another and consecutively with count one, for a total of 48 months.

{¶17} Tackett filed a timely notice of appeal and raises three assignments of error. For clarity and convenience, we combine and consider the assignments as necessary.

{¶18} Tackett's first and second assignments of error state:

> [1.] The State failed to present sufficient evidence to sustain a conviction against Appellant.
>
> [2.] Appellant's convictions are against the manifest weight of the evidence.

7

{¶19} "A challenge to the sufficiency of the evidence raises a question of law as to whether the prosecution met its burden of production at trial." *State v. Bernard*, 11th Dist. Ashtabula No. 2016-A-0063, 2018-Ohio-351, ¶56, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) and *State v. Windle*, 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶25. "'In reviewing the record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."'" *Id.*, quoting *State v. Smith*, 80 Ohio St.3d 89, 113 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶20} In determining whether the verdict was against the manifest weight of the evidence, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins, supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶21} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is

8

not a question of mathematics, but depends on its *effect in inducing belief*.'" *Id.* (emphasis sic), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶22} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶23} A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32.

{¶24} In support of her assignments of error, Tackett argues that the state failed to produce any evidence whatsoever in support of a conviction on each count other than her association with Tomsic. Because each count contains elements, facts, and evidence unique unto themselves, we will analyze each count individually. We omit repetitive reasoning for overlapping concepts.

**Count One- Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs**

{¶25} R.C. 2925.041(A), which governs the charge contained in count one, provides in pertinent part:

> (A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.

> "Possession of drugs can be either actual or constructive." *State v. Rollins*, 3d Dist. Paulding No. 11-05-08, 2006-Ohio-1879, ¶22, citing *State v. Haynes*, 25 Ohio St.2d 264 (1971) Even if the contraband is not in a suspect's "immediate physical possession," the suspect may still constructively possess the item, so long as the evidence

9

demonstrates that [she] "was able to exercise dominion and control over the controlled substance." *State v. Lee*, 11th Dist. No. 2002-T-0168, 2004-Ohio-6954, ¶41, citing *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). To prove constructive possession, "[i]t must also be shown that the person was conscious of the presence of the object." *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982).

*State v. Fogle*, 11th Dist. Portage No. 2008-P-0009, 2009-Ohio-1005, ¶28.

{¶26} Regarding the intent element, "'[p]urpose and intent mean the same thing.'" *State v. Haas*, 11th Dist. Ashtabula No. 2014-A-0025, 2014-Ohio-5770, ¶58, quoting 4 OJI 409.01. "'Purpose is a decision of the mind to do an act with a conscious objective of * * * engaging in specific conduct.' [4 OJI 409.01.] A person's intent is known only to himself unless he expresses it to others or indicates it by his conduct." *Id.* "Thus, the state must often resort to circumstantial evidence to prove a defendant's mental state, such as knowledge or intent, because a defendant hardly ever articulates his mental state." *Id.* (citation omitted).

{¶27} Circumstantial evidence is the proof of facts by direct evidence from which a factfinder may reasonably infer the existence of other facts. *State v. Pistillo*, 11th Dist. Lake No. 2003-L-183, 2004-Ohio-6333, ¶20. "The Supreme Court of Ohio has held that "'circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'" *Fogle*, *supra*, at ¶30, quoting *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus. Further, we have previously agreed with the Third Appellate District in holding that constructive possession of contraband may be supported solely by circumstantial evidence. *Id.* (citations omitted).

{¶28} The Eighth District Court of Appeals detailed the various ways in which the state can show intent to manufacture in *State v. Seldon*, 8th Dist. Cuyahoga No. 98429, 2013-Ohio-819, ¶24:

> In cases throughout Ohio where convictions for Assembly or Possession of Chemicals used to Manufacture Controlled Substance were upheld, the state produced evidence from which a jury could conclude beyond a reasonable doubt that the requisite intent to manufacture existed. Such evidence included the following:
>
> That the defendant knew how to manufacture methamphetamine, *State v. Stevenson*, 5th Dist. No. 09CA16, 2010-Ohio-2060; that the defendant made admissions that he intended to manufacture and/or had participated in the manufacture of methamphetamine, *State v. Smith*, 4th Dist. No. 09CA29, 2010-Ohio-4507; that the defendant's prior acts or statements of accomplices and/or other witnesses, demonstrated the defendant's knowing participation in the manufacture of methamphetamine, [*State v. Cumberledge*, 11th Dist. No. 2010-L-142, 2012-Ohio-3012]; the defendant, in addition to chemicals, possessed the actual physical equipment needed to manufacture methamphetamine, such as beakers, filters, tubing, electrical tape, copper fittings, a heat source, etc., *State v. Throckmorton*, 4th Dist. No. 08CA17, 2009-Ohio-5344, *reversed on other grounds*; the defendant possessed or had known access to a methamphetamine lab, or had injuries consistent with work in a methamphetamine lab, *State v. Downing*, 12th Dist. No. CA2009-09-036; the defendant possessed quantities of the drug, or known drug delivery devices, i.e., syringes, contemporaneous with his possession of the chemicals, *Throckmorton*, *supra*.

{¶29} Tackett's argument with regard to this count is that there was no evidence of actual or constructive possession of the chemicals for manufacturing, nor was there any evidence presented that she possessed the requisite intent to manufacture methamphetamine. We disagree.

{¶30} Tackett was a lessee and lived at the residence where the chemicals and equipment to manufacture methamphetamine were found. The items included not only chemicals, but tools for manufacturing such as tubing, gloves, filters, cotton balls, and

11

other items used to manufacture methamphetamine. Further, each of the witnesses presented by the state testified as to the materials being in plain sight throughout the residence, and photographic evidence depicted as much. This creates an inference that Tackett was consciously aware of and had knowledge of their presence. *See State v. Owens,* 11th Dist. Ashtabula No. 2017-A-0056, 2018-Ohio-1334, ¶33 (manufacturing items in plain view supported a conclusion of conscious awareness). Also, Tackett had unrestrained access to all the areas where contraband was found. Therefore, she was able to exercise dominion and control over the items. The testimony and text messages of Tomsic, produced as exhibits at trial, also revealed that neither he nor Tackett was receiving an income, and that Tomsic was actively trafficking in drugs as a source of revenue for the household.

{¶31} When this evidence is taken together and viewed in a light most favorable to the state, there is sufficient and convincing evidence that could lead a rational trier-of-fact to conclude that Tackett constructively possessed chemicals to manufacture a controlled substance with the intention to do so.

**Count Two- Trafficking in Heroin**

{¶32} The state presented a theory that while Tackett was not directly trafficking in heroin, she was complicit in the offense with Tomsic. R.C. 2925.03, which governs the charge contained in count two, provides in pertinent part:

> (A) No person shall knowingly do any of the following: * * *
>
>> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

12

{¶33} The theory of complicity advanced by the state is codified in R.C. 2923.03, which provides in pertinent part:

> (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> * * *
>
> (2) Aid or abet another in committing the offense[.]
>
> * * *
>
> (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

{¶34} "'[T]he mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.'" *State v. Johnson*, 93 Ohio St.3d 240, 243 (2001), quoting *State v. Widner*, 69 Ohio St.2d 267, 269 (1982). "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id.*

{¶35} Tackett's argument here is that there was no evidence of her trafficking. Tackett maintains that she was unaware of Tomsic's trafficking in heroin, both on the night of the arrest or prior, and that she was an unwitting companion. We find her argument unpersuasive.

{¶36} There was circumstantial evidence presented to the jury that Tomsic was trafficking in heroin and that Tackett was aiding and abetting him. Neither party had an income at the time they were living together, which creates an inference that their expenses may have been paid by alternative means such as trafficking in drugs. At trial, Tomsic admitted to trafficking in drugs during the time period in question. Further, various

13

text messages from his phone were presented which evidenced trafficking; Deputy Johns testified from his direct knowledge and experience with drug trafficking that the language used by Tomsic was code for drug trafficking. The heroin found by police during their investigation was transported from Tackett's residence, where she lived with Tomsic, to the vehicle where they were stopped by Deputy Pinney. Deputy Pinney testified that Tackett was moving around and shifting under her seat prior to the car pulling over, which creates an inference that she was aiding Tomsic in concealing drugs in the vehicle. This inference is also supported by the fact that, even though she was not charged with it, Tackett possessed a trafficking tool, a bag full of hypodermic syringes, in her purse. Deputy Pinney observed this during the stop and his testimony was offered to the jury, as well as photographs of the purse containing the syringes.

{¶37} When this evidence is taken together and viewed in a light most favorable to the state, there is sufficient and convincing evidence that could lead a rational trier-of-fact to conclude that Tackett was complicit in Tomsic's trafficking of heroin.

**Count Three- Possession of Heroin**

{¶38} Following trial, the state conceded that counts two and three merged for purposes of sentencing and elected to proceed with count two. "The Supreme Court of Ohio has defined a conviction as the combined occurrence of a finding of guilty *and the imposition of a sentence.*" *State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶17, citing *State v. Henderson*, 58 Ohio St.2d 171, 178 (1979) (emphasis added). In this case, there was a finding of guilty on count three, but no imposition of a sentence. Therefore, there was no conviction for possession of heroin. *Id.*, citing *State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661, ¶24 and *State v. Williams*,

14

4th Dist. Scioto No. 11 CA3408, 2012-Ohio-4693, ¶54. We therefore do not need to consider the weight or sufficiency of the evidence regarding this count. *Id.*

**Count Four- Aggravated Possession of Drugs**

{¶39} R.C. 2925.11, which governs the charge contained in count four, provides in pertinent part:

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
>
> * * *
>
> (C) Whoever violates division (A) of this section is guilty of one of the following:
>
> > (1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated possession of drugs.

{¶40} Tackett's argument regarding count four, as with count one, is that there was no evidence of actual or constructive possession of drugs—namely, methamphetamine under the aggravated possession statute. Once again, we disagree.

{¶41} As stated previously, possession of drugs can be either actual or constructive. *See Fogle, supra,* at ¶28. The methamphetamine did not have to be found directly on Tackett's person to establish possession. *See State v. Jones,* 11th Dist. Ashtabula No. 2016-A-0017, 2017-Ohio-251, ¶28. "While mere presence in the vicinity of the item is insufficient to justify possession, ready availability of the item and close proximity to it support a finding of constructive possession." *State v. Trammer,* 8th Dist. Cuyahoga No. 85456, 2005-Ohio-3852, ¶24 (citation omitted). Further, when a person knowingly exercises control of an item that is readily available and in close proximity to

15

them, sufficient evidence exists to support a finding of constructive possession. *Jones*, *supra*, at ¶26, citing *State v. Swalley*, 11th Dist. Ashtabula No. 2010-A-0008, 2011-Ohio-2092, ¶54-55.

{¶42} Here, there was enough evidence presented to create an inference of constructive possession of methamphetamine. The methamphetamine was in the backseat of Tomsic's car in a Crown Royal bag at the time of the traffic stop, readily available and in close proximity to Tackett in the front passenger seat. Further, prior to the vehicle's stop, Tackett was observed twisting and turning in her seat, which supported an inference that she was actually exercising dominion and control over items in the vehicle. Also, Tomsic was able to exercise dominion and control over the methamphetamine in the vehicle, which supports an inference that Tackett and Tomsic had joint possession. *See Trammer, supra*, at ¶25 ("because both [Defendant] and his passenger had equal access and control of the drugs, they jointly possessed them").

{¶43} When this evidence is taken together and viewed in a light most favorable to the state, there is sufficient and convincing evidence that could lead a rational trier-of-fact to conclude that Tackett constructively possessed methamphetamine.

**Count Five- Possession of Criminal Tools**

{¶44} R.C. 2923.24, which governs the charge contained in count one, provides in pertinent part:

> (A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.
>
> * * *
>
> (C) Whoever violates this section is guilty of possessing criminal tools. * * * If the circumstances indicate that the substance, device,

16

instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree.

{¶45} Tackett again argues that there was no evidence of actual or constructive possession of criminal tools. However, evidence was presented that Tackett's residence contained various items used for manufacturing methamphetamine. Also, the constructive possession analysis contained above also weighs in favor of a finding of constructive possession of criminal tools. For the reasons discussed above, when the evidence presented at trial is taken together and viewed in a light most favorable to the state, there is sufficient and convincing evidence that could lead a rational trier-of-fact to conclude that Tackett possessed criminal tools; namely, chemicals, digital scales, tubing, gloves, filters, and other materials, at her residence with the purpose of committing the felonies of either manufacturing or trafficking drugs.

{¶46} With regard to each of the four counts that proceeded to sentencing, Tackett's first and second assignments of error are without merit.

{¶47} Tackett's third assignment of error states:

{¶48} "[3.] Appellant was denied a fair trial by the witness' improper comments while testifying."

{¶49} First, we note that Tackett did not object to Detective Rose's second line of testimony. Therefore, she would normally have forfeited all but plain error review. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶72-73, citing *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus. This is because, generally, "the admission of evidence lies within the broad discretion of the trial court * * *." *See, e.g., State v. Klaue*, 11th Dist. Ashtabula No. 2007-A-0046, 2007-Ohio-6933. However, our

17

standard of review with regard to the admission of Evid.R. 404(B) "other acts" evidence is, at times such as the matter sub judice, a legal conclusion and should be reviewed de novo.

{¶50} As explained by our court with regard to the admission of hearsay in *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, ¶23:

> Although we apply an abuse of discretion standard to evidentiary rulings on matters such as relevancy and the admission of expert testimony, the trial court does not have discretion to admit hearsay "except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802. *See also*, *State v. DeMarco*, 31 Ohio St.3d 191, 195 (1987). Therefore, we apply a de novo review to determine whether the testimony here constitutes hearsay or non-hearsay. *See John Soliday Fin. Group, LLC v. Pittenger*, 190 Ohio App.3d 145, 150, 2010-Ohio-4861 (5th Dist.).

{¶51} Following with that principal, the trial court does not have discretion to admit evidence that is clearly not permitted by the law. Similar to hearsay, the threshold determination of whether the evidence is admissible "other acts" evidence, based on the requirements in the rule and as established by case law, is a legal determination. If it is not admissible under the objective criteria, the trial court does not have "discretion" to admit it.

{¶52} "The Supreme Court of Ohio has held that evidence of other acts is to be construed against admissibility." *Klaue, supra*, at ¶50, citing *State v. Lowe*, 69 Ohio St.3d 527, 530 (1994). "This is because '[t]he average individual is prone to much more readily believe that a person is guilty of the crime charged if it is proved to his satisfaction that

18

the defendant has committed a similar crime.'" *Id.*, quoting *State v. Hector*, 19 Ohio St.2d 167, 174-175 (1969).

> The Supreme Court of Ohio has held that "[e]vidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Lowe,* 69 Ohio St.3d at 530, 634 N.E.2d 616. "Under R.C. 2945.59, the state does not need to establish proof beyond a reasonable doubt that the offender committed the other act." *State v. Burns,* 11th Dist. No. 2000-L-189, 2002-Ohio-3585, at ¶17, citing *State v. Carter* (1971), 26 Ohio St.2d 79, 269 N.E.2d 115, paragraph one of the syllabus. "Rather, the state need only offer substantial evidence that the defendant committed the other alleged act." *Id.* at ¶17, 269 N.E.2d 115, citing *State v. Carter,* paragraph one of the syllabus.

*Id.* at ¶51.

{¶53} The Supreme Court of Ohio has also established the following three-step analysis regarding the admission of "other acts" evidence: (1) whether it is relevant under Evid.R. 401, (2) whether it is presented for a permissible purpose, such as those stated in Evid.R. 404(B), rather than to prove the character of the accused in order to show activity in conformity therewith, and (3) whether its probative value is substantially outweighed by the danger of unfair prejudice under Evid.R. 403. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶20.

{¶54} Further, the Supreme Court of Ohio has held that "other acts" evidence must have a "temporal, modal and situational relationship" with the charged offenses so that it "discloses purposeful action in the commission of the offense in question." *State v. Burson*, 38 Ohio St.2d 157, 159 (1974). In other words, evidence of "other acts" is more likely to be relevant if it involves "the same crime, or a lesser included offense within the charged crime, or an offense for which the charged crime is itself a lesser included

19

offense." *State v. Snowden*, 49 Ohio App.2d 7, 11 (1st Dist.1976). To the contrary, "an act too distant in time or too removed in method or type has no permissible probative value to the charged crime." *Id.* at 10.

{¶55} In addition, there must be "substantial proof" the defendant committed the alleged similar acts. *State v. Broom*, 40 Ohio St.3d 277, 282-83 (1988), citing *State v. Carter*, 26 Ohio St.2d 79 (1971), paragraph two of the syllabus.

{¶56} In this case, it is the state's position that the testimony in question is admissible under Evid.R. 404(B). We disagree.

{¶57} First of all, under this rule, if the proponent intends to proffer evidence of "other crimes, wrongs or acts," it must give "reasonable notice before trial" or during trial if the court excuses the lack of proper notice. The evidence is admissible only to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B); *see also*, *e.g.*, *State v. Smith*, 49 Ohio St.3d 137, 140 (1990) ("other acts" evidence is admissible to show "intent" or "knowledge" when it "tend[s] to prove that the accused understood the wrongful nature of his act by virtue of the fact that he committed prior or subsequent wrongful acts").

{¶58} The testimony at issue here is the worst form of "other acts" testimony and should not have been permitted. The testimony is reproduced again below for reference. The following was the first line of questioning offered by the state:

> Q. Now, via a channel of information that's coming through the patrol division and et cetera, had you ever heard the names Joseph Tomsic and Karen Tackett?
>
> A. I did.
>
> Q. And when did you recall first hearing those two names?

20

A. Karen Tackett, in 2000, her and Darren Tackett were still together at the time. I've been employed with the Sheriff's Department since 1995, so the - - and then with Joe Tomsic, it started in I think it was late 2011, early part of 2012.

Q. What do you mean? What started in 2011-2012?

A. When I would encounter Karen Tackett and Joe Tomsic, was starting in that time period.

Q. And based on what information? In 2011-2012, what information were you receiving regarding those two names?

A. That they were involved in trafficking, manufacturing methamphetamines, heroin. They were taking stolen property in exchange for payment for those items.

{¶59} Before admonishing the jury that the first line of questioning is stricken and should not be considered, the trial court suggested to the prosecutor during a sidebar that it would be appropriate if the witness offered a more general answer regarding criminal activity. This compounded the problem:

The Court: I think it is prejudicial. If he had a more general answer you were stating about criminal activity --

Mr. Hartup: I can get there.

The Court: Okay. So I'm going to strike the last question and the answer and have the Jury disregard it, and you can ask another one, something else. You can ask something else.

Mr. Hartup: You are going to strike what?

The Court: The last question and answer. So I will – based on the fact that the answer is too prejudicial, the Court will strike the entire answer of the witness at this time, and the prosecutor will follow up with another question.

Mr. Hartup: Yes. All right. Thank you.

21

After the sidebar and instructions to the jury that the question and answer should be disregarded, the state offered the following, more vague version of the same line of questioning:

> Q. In 2011 and 2012, you had information regarding Joseph Tomsic and Karen Tackett that you had received, correct?
>
> A. Correct.
>
> Q. And was that in regards to criminal activity?
>
> A. That is correct.
>
> Q. And was it in regards to criminal activity for Joseph Tomsic only?
>
> A. No. Both.
>
> Q. And from 2011 to 2012, when you had first started receiving that information, did it end just in that short time period, or did it continue through February of 2016.
>
> A. It continued through February of 2016.

{¶60} The vague nature of the accusations made in the second line of questioning is even more problematic than the testimony the trial court struck as clearly prejudicial.

{¶61} First, the testimony is largely based on hearsay. The original testimony elicited that Tackett—based on the detective's prior knowledge of her "via a channel of information . . . et cetera" from some unidentified source—had been engaging in the type of behavior she was charged with in this case from 2011-2012 up until the present. After that was stricken as prejudicial by the court, the state proceeded to elicit testimony that Tackett—based, again, on the detective's prior knowledge of her and "information" from some unidentified source—had been engaging in general criminal behavior from 2011-2012 until the present.

22

{¶62} The second line of questioning of Detective Rose by the state generically referenced "criminal activity." It did not contain any description of actual criminal acts Tackett may have committed, so it was impossible to discern whether such activity was the same as or similar to the charged offenses. Because the testimony did not establish the existence of "other acts," it follows that there was no "substantial proof" Tackett committed them. *See State v. Meddock*, 4th Dist. Pike No. 16CA864, 2017-Ohio-4414, ¶47 ("vague description" of "prior encounter with a knife" not probative of defendant's intent to commit drug offenses).

{¶63} Further, Detective Rose's broad reference to "criminal activity" did not tend to prove Tackett's "absence of mistake or accident," "intent," or "knowledge" with respect to the charged offenses. It only tended to prove Tackett engaged in some type of criminal activity in the past, which Evid.R. 404(B) expressly prohibits. Therefore, the testimony fails to meet any prong of the *Williams* test and should not have been admitted.

{¶64} In addition, nothing in the record suggests the state gave any type of notice to Tackett of its intention to use this evidence. Further, even if Tackett had been put on notice of the state's intention to use this testimony, there was no way for Tackett to defend herself because there was no specific act to rebut. Tackett's defense at trial was that, while her boyfriend engaged in most of this conduct, she was an unwitting companion. The testimony that was improperly admitted was highly prejudicial, and it appears to have been offered specifically to rebut Tackett's defense.

{¶65} Finally, while there should have been a renewed objection to this second line of testimony, due to the highly prejudicial nature of the testimony and the state's

23

acknowledgment that it did not provide prior notice to Tackett of its intention to use such evidence, its admission would also amount to plain error.

{¶66} The third assignment of error has merit.

{¶67} The judgment of the Ashtabula County Court of Common Pleas is reversed. Tackett's conviction is vacated, and the matter is remanded for a new trial.

THOMAS R. WRIGHT, P.J., concurs,

MARY JANE TRAPP, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.

_____

MARY JANE TRAPP, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.

{¶68} I concur with the majority's opinion as to all assignments of error except assignment of error three.

{¶69} In her third assignment of error, Ms. Tackett claims she was denied a fair trial as a result of Detective Rose's testimony referencing her prior criminal activity. I agree with the majority's statement that the failure to object to the other-acts evidence would normally waive all but plain error because the admission of evidence lies within the broad discretion of the trial court, and I agree Detective Rose's testimony that Ms. Tackett engaged in "criminal activity" was not admissible. But we part ways over the standard of review for admission of other-acts evidence and the majority's finding that the admission of this evidence was plain error. I also find that the failure of the state to give notice of its intention of proffer other-acts evidence was harmless in this case.

24

{¶70} At the core of my dissent is my finding that there was overwhelming evidence supporting the jury's verdict that Ms. Tackett was a part of a drug production and supply operation based out of the home she leased; thus, I do not find that the testimony affected the outcome of the trial.

**Standard of Review of Other-Acts Evidence**

{¶71} Since the majority opines that the standard of review for the admissibility of other-acts evidence is a de novo standard, it would appear from its opinion that the majority is essentially determining a plain error analysis does not apply.

{¶72} The majority appears to be conflating separate issues. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). To show plain error, the defendant must show that (1) there was an error, i.e., a deviation from a legal rule, (2) the error was "plain," i.e., an obvious defect in the trial proceedings, and (3) the error affected substantial rights, i.e., the outcome of the trial. (Citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶73} The first issue — whether there was error — involves whether the evidence was properly admitted. Supreme Court of Ohio precedent advises abuse of discretion relates to this prong. If the trial court abused its discretion in admitting this evidence, then a plain error analysis must be undertaken because Ms. Tackett did not object to the other-acts testimony at trial.

{¶74} As noted, I disagree with the majority's assertion that "our standard of review with regard to the admission of Evid.R. 404(B) 'other acts' evidence is, at times such as the matter sub judice, a legal conclusion, and should be reviewed de novo." In the abstract, I understand the majority's assertion that, as a matter of law, hearsay

25

evidence is inadmissible unless there is an exception; thus, a review of the admission of non-excepted hearsay evidence is de novo. However, the record in this case does not establish that the other-acts testimony was hearsay, i.e. "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Detective Rose's testimony was based largely upon his personal knowledge of Ms. Tackett's and Mr. Tomsic's criminal activity gained over a number of years in law enforcement in this community.

{¶75} More importantly, the Supreme Court of Ohio has instructed "[a]ppellate review of a trial court's decision regarding the admissibility of other crimes, wrongs, or acts under Evid.R. 404(B) is conducted under an abuse-of-discretion standard." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶1. The court in *Morris* rejected a de novo standard of review regarding the admissibility of other-acts evidence, declaring "trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court. Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review. To the extent that the appellate court reviewed de novo a trial court decision as to whether certain evidence was admissible, the appellate court erroneously departed from a well-established principle." *Id*. at ¶22.

{¶76} As in *Morris*, Ms. Tackett's assigned error presented "a review of an evidentiary determination: Did the trial court erroneously admit the state's * * * other-acts testimony? Defendant's argument was not whether the state's * * * other-acts testimony fit, *as a matter of law*, within an Evid.R. 404(B) enumerated category. However, it is this

26

issue that the appellate court attempted to resolve when it applied a de novo standard of review to this matter." (Emphasis added.) *Id.* at ¶20.

{¶77} Applying an abuse of discretion standard, I find error in the admission of the second attempt to offer other-acts testimony.

**The Testimony at Issue**

{¶78} Ms. Tackett argues that two portions of Detective Rose's testimony were inadmissible at trial. First, Ms. Tackett objects to the following exchange:

{¶79} "[THE STATE]: And based on what information? In 2011-2012, what information were you receiving regarding those two names [Joseph Tomsic and Karen Tackett]?

{¶80} "[DETECTIVE ROSE]: That they were involved in trafficking, manufacturing methamphetamines, heroin. They were taking stolen property in exchange for payment for those items."

{¶81} The trial court, however, found this statement inadmissible. Ms. Tackett's trial counsel objected on the grounds the testimony was unduly prejudicial. The trial court sustained the objection and directed the jury to disregard Detective Rose's answer. Further, during jury instructions, the trial court told the jury that statements or answers stricken by the court "are not evidence and must be treated as though you never heard them."

{¶82} A trial jury is presumed to follow the instructions given to it by the judge. (Citation omitted.) *State v. Henderson*, 39 Ohio St.3d 24, 33 (1988). *See State v. Griesmar*, 11th Dist. Lake No. 2009-L-061, 2010-Ohio-824, ¶32, quoting *State v. Dalton*, 11th Dist. Portage No. 2008-P-0097, 2009-Ohio-3149, ¶55 (the trial court's curative

instruction was sufficient to "render the purported error harmless"). There is nothing in the record to indicate the trial court's instruction was not followed. *See State v. Adams*, 11th Dist. Ashtabula No. 2012-A-0025, 2013-Ohio-1603, ¶58. Accordingly, Detective Rose's statement was not before the jury for its consideration, and whether the statement was legally admissible is not before the court. *See id.*

{¶83} After the trial court issued its curative instruction, the state was permitted to elicit less specific testimony from Detective Rose:

{¶84} "[THE STATE]: In 2011 and 2012, you had information regarding Joseph Tomsic and Karen Tackett that you have received, correct?

{¶85} "[DETECTIVE ROSE]: Correct.

{¶86} "[THE STATE]: And was that in regards to criminal activity?

{¶87} "[DETECTIVE ROSE]: That is correct.

{¶88} "[THE STATE]: And was it in regards to criminal activity for Joseph Tomsic only?

{¶89} "[DETECTIVE ROSE]: No. Both.

{¶90} "[THE STATE]: And from 2011 and 2012, when you first started receiving that information, did it end just in that short time period, or did it continue through February of 2016?

{¶91} "[DETECTIVE ROSE]: It continued through February of 2016."

{¶92} On appeal, Ms. Tackett contends the second portion of Detective Rose's testimony was inadmissible, but she did not object to this testimony at trial. As noted, the failure to object to other-acts testimony constitutes waiver of all but plain error. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶271.

28

{¶93} The first question is whether the trial court erred in admitting the second portion of Detective Rose's testimony, and, if so, whether such error constituted plain error. (Citations omitted.) *State v. Hill*, 92 Ohio St.3d 191, 200 (2001) (the "first condition to be met in noticing plain error is that there must be error").

**Pretrial Notice**

{¶94} The state concedes it did not provide Ms. Tackett with formal pretrial notice of its proposed use of other-acts testimony, as Evid.R. 404(B) requires ("In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial").

{¶95} However, the Staff Notes to the 2012 Amendment to Evid.R. 404 state the rule "should not be construed to exclude otherwise relevant and admissible evidence solely because of a lack of notice, absent a showing of bad faith." The purpose of the rule is to prevent "unfair surprise." *State v. Plevyak*, 11th Dist. Trumbull No. 2013-T-0051, 2014-Ohio-2889, ¶12, 19.

{¶96} There is nothing in the record demonstrating the state engaged in "bad faith" or "unfairly surprised" the defense. Rather, the state disclosed its intention to call Detective Rose as a witness on multiple occasions prior to trial. During the side bar conference discussion regarding the objection to first portion of the other-acts testimony, defense counsel did not claim surprise and acknowledged "some relevance" to Detective Rose's testimony regarding his knowledge of Mr. Tomsic and Ms. Tackett. Therefore, I find the state's failure to provide formal pretrial notice was harmless.

**Admissibility**

{¶97} As the majority correctly notes, the first inquiry under the *Williams* test is whether the other-acts evidence is relevant under Evid.R. 401. *See State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶20.

{¶98} "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Irrelevant evidence is inadmissible, while relevant evidence is generally admissible subject to certain exceptions. *See* Evid.R. 402.

{¶99} Ms. Tackett's defense at trial was that she was merely present when the charged offenses occurred but did not possess the requisite knowledge or intent to commit any offenses. During opening statements, her trial counsel suggested Ms. Tackett may have just been "along for the ride" when Mr. Tomsic was pulled over. Further, her trial counsel rejected any suggestion that since Ms. Tackett and Mr. Tomsic were "in a relationship * * * she must be doing everything that [Mr. Tomsic] is doing."

{¶100} Given Ms. Tackett's stated defense, other-acts evidence was potentially relevant to prove the "absence of mistake or accident" on Ms. Tackett's part (i.e., that Ms. Tackett was not merely an innocent bystander in Mr. Tomsic's drug activities). *See, e.g., State v. Barker*, 7th Dist. Jefferson No. 05-JE-21, 2006-Ohio-1472, ¶53 (other-acts testimony admissible to show the defendant "was well aware of, and participated in, drug activity" with his girlfriend).

{¶101} Other-acts evidence was also potentially relevant to prove Ms. Tackett's "intent" or "knowledge" to commit the charged offenses. *See, e.g., State v. Smith*, 49

Ohio St.3d 137, 140 (1990) (other-acts evidence is admissible to show "intent" or "knowledge" when it "tend[s] to prove that the accused understood the wrongful nature of his act by virtue of the fact that he committed prior or subsequent wrongful acts").

{¶102} As noted in the majority's opinion, and it bears repeating, other-acts evidence must have a "temporal, modal and situational relationship" with the charged offenses so that it "discloses purposeful action in the commission of the offense in question." *State v. Burson*, 38 Ohio St.2d 157, 159 (1974). In other words, evidence of "other acts" is more likely to be relevant if it involves "the same crime, or a lesser included offense within the charged crime, or an offense for which the charged crime is itself a lesser included offense." *State v. Snowden*, 49 Ohio App.2d 7, 11 (1st Dist.1976).

{¶103} In addition, "an act too distant in time or too removed in method or type has no permissible probative value to the charged crime." *Id*. at 10. Further, there must be "substantial proof" the defendant committed the alleged similar acts. *State v. Broom*, 40 Ohio St.3d 277, 282-83 (1988), citing *State v. Carter*, 26 Ohio St.2d 79 (1971), paragraph two of the syllabus.

{¶104} I agree with the majority that the second portion of Detective Rose's testimony generically referencing "criminal activity," some of which occurred as long as five years prior to the charged offenses, did not contain any description of actual criminal acts Ms. Tackett may have committed, so it was impossible to discern whether such activity was the same as or similar to the charged offenses. And since the testimony did not establish the existence of "other acts," there was certainly no "substantial proof" Ms. Tackett committed them.

31

{¶105} Further, I agree that the "criminal activity" did not tend to prove Ms. Tackett's "absence of mistake or accident," "intent," or "knowledge" with respect to the charged offenses. It only tended to prove Ms. Tackett was a criminal, which Evid.R. 404(B) expressly prohibits.

{¶106} Thus, I agree with the majority that the second portion of Detective Rose's testimony fails the first step of the *Williams* test; therefore, the trial court erred in admitting it. My review of the extensive evidence presented by the state fails to convince that but for this error, Ms. Tackett would have been acquitted.

**Plain Error**

{¶107} As previously indicated, under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To show plain error, a defendant must show "(1) there was an error, (2) the error was 'plain,' i.e., obvious, and (3) the error affected substantial rights." *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶217, citing *Barnes* at 27. To affect "substantial rights," the trial court's error "must have affected the outcome of the trial." *Id.*, citing *Barnes* at 27. The defendant is therefore required to demonstrate a reasonable probability that the error resulted in prejudice — the same deferential standard for reviewing ineffective assistance of counsel claims. *Id.*

{¶108} "[A] defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously." *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, ¶110; *Tench* at ¶245 ("in view of the overwhelming evidence of guilt, we cannot find plain error").

{¶109} The majority finds the admission of the other-acts testimony would "also amount to plain error." I disagree. Based on all the other evidence presented at trial extensively detailed in the majority's discussion of the assignments relating to sufficiency and weight of the evidence, the jury still would have likely found Ms. Tackett guilty of the charged offenses.

{¶110} Under Crim.R. 52(B), the defendant bears the burden of demonstrating that a plain error affected his or her substantial rights. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶14. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to "prevent a manifest miscarriage of justice." *Id.* The rule states that a reviewing court "may" notice plain error; it is not obligated to correct them. *Barnes* at 27.

{¶111} The majority has not demonstrated how the outcome of the trial would have been different or how a manifest miscarriage of justice would occur otherwise. The majority states "[t]here is no way to tell whether the detective's testimony * * * influenced the jury in their deliberations." In addition, the majority, without even referencing the other-acts testimony, found the evidence to be sufficient to support conviction and that her convictions are not against the manifest weight of the evidence. These findings demonstrate Ms. Tackett did not meet her burden.

{¶112} I would affirm the verdict.